Breitel, J.
These six criminal cases involve, in one fashion or another, the taking of a plea of guilty to a lesser crime than that charged in the indictment. Questions are raised whether the pleading court has an obligation in every case to inquire of the defendant concerning his guilt and the propriety of the plea. Also at issue are the obligations of the court when the defendant on sentence interposes assertions affecting his guilt or the propriety of the earlier plea.
Thus far this court has made it clear that if, in pleading guilty, a defendant has cast doubt upon his guilt, he must be permitted to withdraw his plea and shall not be permitted to plead guilty under such circumstances until the court ascertains that the defendant is aware of what he is doing (People v. Serrano, 15 N Y 2d 304). More recently, this court has made it equally clear that an uncounselled defendant, in obviously distressed circumstances and, particularly, charged with a non-predatory crime, must not be permitted to waive counsel and plead"guilty without the court’s first ascertaining that defendant *345 understands the consequences of the waiver and has indeed committed a criminal act (People v. Seaton, 19 N Y 2d 404). In the latter case, the pleading court’s responsibility was described as a heavy one, and the proceeding was remanded although defendant had never moved to withdraw her plea (cf. People v. Nicholson, 19 N Y 2d 983).
This year a committee of the American Bar Association Project on Minimum Standards for Criminal Justice recommended in a tentative draft that no plea of guilty should be allowed except on inquiry by the pleading court to determine that the defendant understands the nature of the charge. The court must advise the defendant that by pleading guilty he thereby waives his right to a jury trial. The defendant must also be advised of the various penal sanctions to which he, in particular, is made subject by his plea. In addition, the court should ascertain the voluntariness of the plea and, before imposing sentence, should determine whether there is a factual basis for the plea. (American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty, Tent. Draft [Feb., 1967], pp. 7-8). These and other standards are discussed in the draft, without definitive suggestion that the requirements be imposed by statute, formal court rule, or decisional doctrine. Such standards as already exist have been propounded in all of these ways.
The recently amended rule 11 of the Federal Rules of Criminal Procedure provides that ‘ ‘ the court may refuse to accept a plea of guilty, and shall not accept such plea * * * without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea * * * The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.”
These pronouncements appear to state obviously desirable standards. Perhaps they should be followed generally where circumtances allow and, certainly, whenever the circumstances suggest that their omission would lead to possible injustice. The questions now before this court are whether the standards should be universally required and, if so, whether the court or the Legislature is the proper engine for their promulgation. Also involved, of course, is the question whether there are or *346 may be circumstances in which some of the standards are not practicable or desirable. Before discussing these questions further it is appropriate to consider the concrete cases at hand for the light they cast on the variety of circumstances which arise, always a desirable and traditional method to follow.
In People v. Nixon, defendant appeals from his conviction in 1965 for manslaughter in the second degree and a sentence of from 7% to 16 years’ imprisonment based on his plea of guilty. The Appellate Division unanimously affirmed the conviction. Defendant had been charged with murder in the first degree. He was represented by counsel. Defendant had concededly knifed the decedent in an incident involving his girl friend. At the time of the plea the prosecutor described the offense in detail. Defendant answered the court’s question that the statement was true and that his readiness to plead guilty to the lesser offense was voluntary. On sentence, however, defendant stated to the court that he had not been the attacker but had been the one attacked. The court promptly asked him if he wished to withdraw his plea. One of defendant’s lawyers proceeded to move to withdraw the plea, but another asked for a recess saying that defendant was confused. On the second call, defendant stated without qualification that he had no legal cause why judgment should not be imposed upon him and admitted that he had been convicted previously of robbery in the first degree. He was thereupon sentenced as a second felony offender. The argument on appeal is that the court never questioned defendant about the factual basis for the plea even after defendant, on sentence, indicated that he might have a defense.
In People v. Fooks, defendant appeals from his conviction in 1965 for attempted burglary in the third degree and a sentence to the reformatory for up to 5 years based on his plea of guilty. The Appellate Division unanimously affirmed the conviction. Defendant had been charged with burglary in the third degree and grand larceny in the second degree. He was represented by counsel. On tender of the plea, the pleading court inquired of the defendant only if he confirmed the statements by the lawyers that no promises had been made to procure the plea. The court warned defendant that he might be subject to additional penalties. On sentence defendant said he *347 had no cause why judgment should not he pronounced, and the court adverted at length to the bad record of this 20-year-old man. There is no claim of innocence or facts in mitigation, and the only argument on appeal is that the court was obliged to catechize the defendant about the underlying facts of the alleged crime.
In People v. Lang defendant appeals from his conviction in 1966 for possession of a hypodermic needle and a dangerous weapon for which he received consecutive sentences of 6 months on each charge. The Appellate Term affirmed the conviction, one Justice dissenting. Defendant had been charged with possession of narcotic drugs, narcotic instruments, burglar’s tools, and a dangerous weapon. He was represented by counsel. A motion to suppress physical evidence was denied, and the charge of possession of narcotic drugs was dismissed on the prosecutor’s motion for lack of evidence. After a brief bench conference with the lawyers, the plea was offered and taken without any inquiry. On sentence, defendant asked to be heard, stated that he had no money, said he did not know why he had pleaded guilty, and asked the court to defend and protect his rights and appeal the case for him. On questioning, he admitted having 14 automobile keys, but doubted if the knife he possessed based a crime under section 1897 of the Penal Law, and stated that he was certain he was not guilty of the narcotics instrument offense, referring to that statute also by section number. The court, a little later in the proceedings, told him there was no appeal and imposed the sentence.
In People v. Robinson defendant appeals from her conviction in 1965 for robbery in the first degree and a sentence of from 10 to 12 years’ imprisonment based on her plea of guilty. The Appellate Division unanimously affirmed the conviction. Defendant had been charged in three indictments, one for murder in the first degree, and two for robbery in the first degree, with related crimes included in the robbery indictments. She was represented by counsel. Defendant and others were implicated in the knockdown and knifing of the deceased victim and in other robberies. The pleas to various lesser offenses were taken from all of the defendants at the same time, each being asked if he admitted the underlying facts. Li the case of this defendant the court asked whether she admitted that with accom *348 plices she had taken moneys, by force, in the nighttime from one William Owens against his will, and that no promises had been made to her. She so admitted. On sentence it appeared from her counsel’s statement to the court that defendant was 25 years old, pregnant, and had a four-year-old son, and that, because she had always denied being involved in the robbery homicide, she had been permitted to plead to another robbery indictment as to which she had acknowledged her guilt. The prosecutor asked that all pending indictments be covered by the sentence. The court then sentenced defendant to from 10 to 15 years’ imprisonment and asked if she had been advised of her right to appeal. Her counsel asked for a recess and, on resumption, defendant stated to the court that she knew nothing of any homicide but knew only about a pocketbook snatch to which she had pleaded guilty. Her counsel asked for another recess and, on further resumption, asked the court to reconsider the sentence. Sentence of from 10 to 12 years was then imposed. Thereupon defendant again blurted out that she knew nothing about any homicide. On appeal it is argued that defendant’s complaints at sentencing were sufficient to invoke an independent obligation on the part of the court to inquire into the underlying facts of the alleged crime, and that it was not enough to rely on defendant’s counsel to perform that function.
In People v. Todzia defendant appeals from a 1966 denial, without a hearing, but with an opinion, of his motion in the nature of coram nobis to vacate a 1952 conviction for grand larceny in the first degree and sentence as a second felony offender from 15 to 20 years’ imprisonment based on his plea of guilty. The Appellate Division unanimously affirmed the denial of the coram nobis motion. In 1952 defendant had been charged with robbery in the first degree. He had been implicated in a series of robberies. Throughout the 1952 proceedings defendant was represented by counsel, as he is now. The pleading court asked only if defendant wished to plead guilty and if he was represented by named counsel. On sentence, however, after defendant and his lawyer both stated that there was no reason why judgment should not be pronounced, the court asked defendant why he could not stay out of trouble. Defendant answered that just drinking was the cause and that he *349 did not know what he was doing when drinking. He went on to say, however, that he obtained a gun from an automobile, presumably stolen, and, in response to a question, that he came to his senses when pursued by the police. Defendant never took a direct appeal from his conviction. On this appeal defendant argues that his comments on sentence required that the court inquire further into the underlying facts and not rely solely on defendant’s counsel. Some point is also made that, at the time of the 1952 proceedings, the publicity defendant received was so widespread as to prevent a fair trial and that, therefore, he was compelled to plead guilty. He evidently grounds his right to use the extraordinary postconviction remedy on the view that the record establishes a violation of constitutionally guaranteed due process of the kind reviewable even on a collateral attack.
In People v. Salone defendant appeals from his conviction in 1966 for attempted felonious possession of narcotics and a sentence from 2½ to 5 years’ imprisonment based on his plea of guilty. The Appellate Division unanimously affirmed the conviction. Defendant had been indicted with another for two sales of narcotics. He was represented by counsel. On plea the court questioned defendant as to his guilt. Defendant denied any possession and denied that any promises had been made to him. He also denied helping the co-defendant who admitted possessing the drugs. When asked what he had done defendant said that he had only made a telephone call. First he said that he did not know the purpose of the call. The court stated at this point that it would not take any plea of guilty unless defendant told the truth. Defendant then said he was guilty, and, when pressed as to why the telephone call was made, he said it was to effect the purchase-of the narcotics and that he knew so at the time. The court then warned defendant that it would hold it against defendant that he had not told the truth in the first instance and queried whether he still wished to plead guilty. Defendant answered that he understood and wished to plead guilty. On appeal it is argued that the information elicited from defendant required the pleading court to go further in its inquiry and that defendant’s answers were susceptible of the construction that he was the agent neither of the seller nor of the buyer of the narcotics.
* * *
*350 There are three significant factors in the Nixon case which suggest that an affirmance is proper. First, the pleading court elicited great detail concerning the crime, albeit directly from Nixon’s lawyer, followed by Nixon’s positive confirmation of his lawyer’s exposition. Second, the record establishes the lawyer’s active and informed role in the proceedings. This was no casual or hurried representation of a defendant suggesting that there had not been adequate consultation between lawyer and client. Third, the court on being advised of defendant’s disclaimers of guilt promptly invited a withdrawal of the guilty plea. Only after a recess and further consultation between client and counsel did the sentence proceeding continue. This is potent evidence that effective representation by the lawyer was present and fully safeguarded. Moreover, defendant was charged with the most serious crime of murder in the first degree, making the lesser plea quite understandable. Lastly, he was a recidivist, already-experienced in the ways of a criminal proceeding.
The Fooks case presents the issue clearly whether a catechism is always required of a defendant who pleads guilty. All that was elicited by the court from counsel and defendant was that no prior promises had been made. Nothing was asked as to the factual basis for the plea. At no time was any effort made to withdraw the plea. There is no suggestion in the record or dehors the record that the guilty plea was improvident or baseless; only the absence of inquiry by the court is argued as nullifying the proceedings. On sentence it appeared that although defendant was only 20 years old, he had an extensive record and was, therefore, familiar with the ways of criminal proceedings. Throughout he was represented by counsel whose active participation appears from the record. There is, therefore, no basis for assuming that defendant might have pleaded improvidently to this predatory crime in the burglary classification or that he was unaware of what he was doing. The conviction should be affirmed.
In the Lang case, despite the obvious sophistication shown by defendant in citing to a variety of statutes by their correct section numbers, there are troublesome factors which suggest that there should be a reversal and a remand to the pleading court. The pleading took place in one of the busiest criminal *351 courts in the land, a circumstance requiring more, not less, care by the pleading and sentencing court. While defendant had counsel the record does not establish that there must have been adequate . consultation between lawyer and client. At least one of the charges against defendant, that of possession of narcotic drugs, was dismissed because it turned out that there were no narcotic drugs. The remaining charges were of a highly technical character, namely, possession of narcotic instruments, burglar’s tools, and a dangerous weapon (knife). They were technical in the sense that the same instruments might or might not be covered by the penal statutes, and in each case the intent or purpose might be material. To top it off, defendant, on sentence, raised precisely such technical objections and plaintively urged that he did not know why he had pleaded guilty. He asked the court to protect his rights and appeal the case for him. He was told abruptly that he was guilty and, incorrectly, that there was no appeal. The court should have conducted an inquiry or permitted defendant summarily to withdraw his plea of guilty. During the proceedings on sentence the only help he received from his counsel was advice to listen to the Judge. The probabilities are, of course, that defendant received his just deserts, but the record made is not one that assures that this is so (compare People v. Serrano, 15 N Y 2d 304, supra, with People v. Serrano, 20 N Y 2d 931). The conviction should be reversed and the proceeding remanded to the trial court.
In the Robinson case the circumstances are unusual. In this instance a young, and pregnant woman, the mother of a very small child, pleaded guilty to the serious crime of robbery in the first degree, and was eventually given a long prison sentence of from 10 to 12 years. But she had been involved with a gang of street robbers that had been responsible for a homicide. True, she denied any connection with the homicide, but that is just why her plea was taken with respect to another robbery. Most important, because there was a murder indictment, she was represented by. select counsel, and the record establishes repeated consultation between defendant and her lawyer. Indeed, the sentencing procedure was interrupted twice for such consultations, one such interruption carrying the matter over into the afternoon. The sentencing Judge took pains to make sure that *352 defendant was advised even as to her right to appeal. Moreover, it makes no sense to assure that a defendant has competent counsel, assure that counsel is acting competently, and then to displace counsel. Finally, defendant’s reason for confusion is obvious. Because the prosecutor asked that all pending indictments be covered by the sentence, including the murder indictment, defendant believed that this was to her detriment, when in fact it was to her benefit. The purpose, of course, was to remove all other indictments to which she had not pleaded guilty from hanging over her head. The conviction should be affirmed.
Until now recent convictions have been discussed. In the Todzia case, through the coram nobis remedy, there is involved a 1952 conviction for grand larceny in the first degree. At this belated date the court’s colloquy with defendant at the time of sentence is the excuse for appeal. The paradox is that if the sentencing court had not pursued the colloquy there would be no ground for the appeal. The colloquy elicited from this second felony offender, who had committed a series of highly publicized robberies, ending in a dramatic apprehension, revealed that he blamed drink for all his troubles. In the first place, defendant’s comments were made defensively while he was conceding his bad and incorrigible history. Secondly, instead of a defense at law, he thereby admitted to voluntary intoxication. Thirdly, his answers showed that he was quite aware of what he had done while drinking, even to the obtaining of a pistol from an automobile. Throughout, defendant was represented by counsel. Quite important too, as revelatory of the seriousness of defendant’s present claims, is that defendant waited over a decade before asserting them. In stale cases, defendants have all to gain by reopening old convictions, retrial being so often an impossibility. These are factors to consider in determining how valid the assertions are; albeit, if they are made out, justice requires that they be explored in a hearing (cf. People v. Chait, 7 A D 2d 399, 401, affd. 6 N Y 2d 855). The order should be affirmed.
In the Salone case, a recent conviction is involved. But as in the Todzia case, it is the court’s inquiry into the underlying facts, quite properly and perhaps necessarily done, which exposed the difficulty. In this instance again a technical issue was involved, namely, defendant’s complicity stemming from the fact that he *353 claimed to have made only a telephone call. In the absence of an inquiry and the active participation of counsel as revealed in the record, this case would require a disposition different from that recommended. But very much as in the Nixon case, first discussed, the pleading court gave defendant every opportunity not to plead guilty, and, indeed, during the inquiry was refusing to accept the guilty plea. It was defendant’s counsel who pressed the court into pursuing the matter further with defendant in order to elicit the additional facts which showed that the telephone call was not the innocent thing defendant was, at first, trying to make it. Finally, after all the colloquy and with the admonition of the court that it would hold defendant’s prevarication against him in sentencing, defendant was again asked if he still desired to plead guilty. To undo this conviction on the highly technical grounds urged would be to make any catechism of a defendant on pleading the running of an intellectual gauntlet for points and not for justice. The conviction should be affirmed.
From the cases discussed some conclusions can be derived. The primary one is that it is highly doubtful that a uniform mandatory catechism of pleading defendants should be required. To do so might easily lead to the irregular history that has developed with respect to redacting confessions in joint trials, once, but no longer,.looked upon as an easy solution of a difficult problem (compare United States v. Bozza, 365 F. 2d 206, 215-217 [2d. Cir., 1966, Friendly, J.]; People v. La Belle, 18 N Y 2d 405, 410-411; People v. Cole, 27 A D 2d 794; with People v. Vitagliano, 15 N Y 2d 360, 363; People v. Robinson, 13 N Y 2d 296, 302). The circumstances are too various. There are knowledgeable and criminally experienced defendants and there are those who are lacking in intellect or experience, or both. There are cases where the seriousness of the crime, the competency and experience of counsel, the actual intensive participation by counsel, the nature of the crime as clearly understood by laymen, the rationality of the ‘ ‘ plea bargain, ’ ’ and the speed or slowness of procedure in the particular criminal court provide ample data as to how far the court should go in questioning defendants before taking a guilty plea. These are all matters best left to the discretion of the court. In some instances even the most rigorous standards thus far suggested, either in the American Bar Association *354 project or by the Federal rule, are hardly adequate; in others the standards become an unnecessary formalism.
It is commonplace now that a mature jurisprudence, and criminal jurisprudence is no exception, does not rely only on fixed rules but on broad discretions controlled by flexible standards. Roscoe Pound’s comments long ago cannot be improved upon. He said: ‘ ‘ Law is something more than an aggregate of rules. Hence enforcement of law is much more than applying to definite detailed states of fact the pre-appointed detailed consequences. Law must govern life, and the very essence of life is change. No legislative omniscience can predict and appoint consequences for the infinite variety of detailed facts which human conduct continually presents. * * * Only the most primitive bodies of law are composed wholly of rules, and even in primitive codes there is a certain amount of traditional ‘ interpretation ’ to be reckoned with.” (Criminal Justice in America [1930], p. 36.)
The competency of counsel and the degree of actual participation by counsel, as well as his opportunity for and the fact of consultation with the pleading defendant, are particularly important. Indeed, if independent and good advice in the interest of the defendant is the goal, it is more important that he consult with competent counsel than that a harried, calendar-conscious Judge be the one to perform the function in displacement of the lawyer. Moreover, there are many reasons why a- defendant may not wish to be subjected to an inquisition by officials; it may affect him on his prison or parole status; it may be an added pillory for him to experience that he would eschew (see, e.g., People v. Griffin, 7 N Y 2d 511).
Nevertheless, the standards promulgated by the Bar Association committee, albeit tentatively, and those included in the Federal rule, implement principles that may not be ignored. It is not tolerable for the State to punish its members over protestations of innocence if there be doubt as to their guilt, or if they be unaware of their rights, or if they have not had opportunity to make a voluntary and rational decision with proper advice in pleading guilty. The Lang case epitomizes the difficult situation, even though it concerned one who seems to have been criminally involved. In all but one of the other cases there was inquiry to some degree, and it is evident that for the most *355 part the inquiry by the court searched out and illuminated the areas where there was substantial risk of injustice.
It is also quite clear that where initial inquiry exposes difficulties or subsequent interpositions by defendant on sentencing raise questions, the court should be quick to offer the defendant an opportunity to withdraw his plea and at the very least conduct a hearing. Such opportunities offered will squelch the faker and protect the truly misguided ones; and prompt hearings will be better than later ones after direct appeal or collateral post-conviction attack. The Nixon case is particularly illustrative.
The promptness or staleness of complaint with respect to propriety of a guilty plea has already been noted as a significant factor to be considered.
In cases involving defendants without lawyers, or those ignorant of the language of the court, particular pains must be taken. Of course, these days, it is not likely that there will be many uncounselled defendants, but there will still be, as there was in the Seaton case (19 N Y 2d 404, supra), defendants who say they do not want a lawyer. In such cases inquiry, well beyond the standards thus far propounded, is indicated.
But overall, it would seem that a sound discretion exercised in cases on an individual basis is best rather than to mandate a uniform procedure which, like as not, would become a purely ritualistic device. Indeed, today, there is reason to suspect that many pleading defendants are prepared to give the categorical answers only because they know that this is the route to eligibility for the lesser plea. A ritualistic form just because it may save the trouble of thinking is likely to eliminate thinking (see, e.g., American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty, Tent. Draft, supra, p. 32). An oral questionnaire can become just as mechanical as one printed. The taking of the guilty plea should not be made that easy for the defendant or the court or his lawyer. Moreover, there is a weakness in the catechism system, one which some may think can be avoided if legislation were devised to cover the area in question. It should never be enough to undo a plea because of some omission in inquiry at the time of plea without a showing of. prejudice. In none of the cases, except the Lang case, and dehors the record (and, therefore, improperly) in the Nixon case, is there any suggestion by the *356 defendant that he now claims facts which make the plea unjust. While the essence of justice may be procedure there can be a point at which the administration of justice becomes only procedure and the essence of justice is lost.
Accordingly, the judgment of conviction in People v. Lang should be reversed and the proceedings remanded for repleading to the Criminal Court of the City of New York; the order in People v. Todzia should be affirmed; and the judgments of conviction in People v. Nixon, People v. Fooks, People v. Robinson, and People v. Salone should be affirmed.