OPINION OF THE COURT
Jasen, J.
Framed for resolution on this appeal is the question whether the defendant was entitled to an evidentiary hearing to determine whether he was induced to plead guilty because of an off-the-record unfulfilled promise allegedly made to his attorney by the court.
Defendant, Gary Frederick, was arrested on September 29, 1972 for selling various quantities of cocaine, amphetamines and barbiturates to an undercover police officer. By an indictment filed on December 19, 1972, defendant and one Edward Montiell were charged with two counts of criminal sale of a dangerous drug in the third degree and related possessory crimes. Defendant alone was charged in two separate indictments, also filed on December 19, 1972, with the sale of amphetamines and barbiturates on August 24, 1972, and with the possession of heroin, cocaine, opium, methadone, cannabis, amphetamines, barbiturates, and a pistol, which were found in defendant’s apartment at the time of his arrest.
When defendant was taken into custody, he informed the authorities that the undercover officer to whom he sold narcotics had lied about both the quantity of narcotics purchased and the amount of money involved in the transactions. Defendant consented to co-operate with the office of the Special Narcotics Prosecutor in an investigation into the conduct of this allegedly corrupt police officer.
In exchange for defendant’s co-operation, the parties negotiated a plea whereby defendant was to plead guilty to criminal *523 possession of a dangerous drug in the third degree. The prosecutor also agreed to recommend a sentence of probation if defendant’s assistance in the investigation proved satisfactory.
On May 30, 1973, the defendant tendered his guilty plea. The following colloquy occurred between the defendant and the court:
"THE COURT: Having had that discussion [with your attorney] do you understand that you are pleading guilty to a 'C’ felony today?
"DEFENDANT: Yes.
"THE COURT: Do you understand under a 'C’ felony you can receive a sentence of up to fifteen years, as a matter of fact, there could be a minimum sentence of five years and a maximum sentence up to fifteen years; do you understand?
"DEFENDANT: Yes, I do.
* * *
"THE COURT: Now as far as I am concerned, and as far as the District Attorney is concerned, well, I will first ask you this: Has the District Attorney or your attorney indicated to you anything other than that I have the scope and I could sentence you up to fifteen years? Have any promises been made to you beyond what I have just said?
"DEFENDANT: No.
"THE COURT: In other words, what I am saying is I have made no promises except to get a probation report, listen to Mr. Zapp [defendant’s attorney] or whoever will be representing you, I assume Mr. Zapp, on the day of sentence, listen to you if you want to, and listen to the District Attorney if he wants to make any recommendation; but that if I sentence you to anywheres up to fifteen years, or a minimum of five years, up to five years, or a maximum up to fifteen, you have received all promises and recommendations that are here made today; do you understand?
"DEFENDANT: Yes.
* * *
"THE COURT: I notice you turned to Mr. Zapp. I notice he said something to you. I don’t want to mislead you. I assume he didn’t say anything contrary to what I am saying. You understood what I said? I said that you can receive — and I make no promises as far as what I will do on the day of *524 sentence. I don’t say I will, I won’t say I won’t, but I say I have that scope, and I can sentence you, and if you do receive a sentence up to a minimum of five years and a maximum of fifteen, you have no cause for complaint and say that you want to withdraw your plea because I will not allow it; do we understand each other?
"DEFENDANT: Yes.”
Defendant’s sentencing was repeatedly adjourned for several months while the investigation of the undercover officer continued. However, on November 25, 1974, when the parties again appeared before the court to defer sentencing, Mr. Zapp alleged that prior to the entering of defendant’s guilty plea, he requested that the court put on the record its assurance that the defendant would be permitted to withdraw his plea if the court could not, at sentencing, follow the prosecution’s recommendation. Mr. Zapp further contended that the Judge responded, in substance, that such formalities were not necessary since the prosecution’s sentence request was always adopted. The court denied making such a statement, or ever implying that defendant could withdraw his plea if he was not satisfied with the sentence. This discussion culminated in defendant’s motion to withdraw his guilty plea in December of 1974.
Defendant’s motion was denied and he appeared for sentencing on June 27, 1975. Although the prosecutor recommended that defendant be placed on probation, the court, after reviewing the probation reports, stated that it was unable to follow this recommendation and imposed an indeterminate four-year prison sentence. The Appellate Division unanimously affirmed.
In this court, defendant claims that he was entitled to an evidentiary hearing on his motion to withdraw his guilty plea. In support of his motion, defendant alleged that he was induced to plead guilty by his attorney’s representation that the court promised to sentence him in accordance with the prosecutor’s recommendation. If this allegation were indeed true, defendant should have been allowed to withdraw his plea, for it is well settled that "a guilty plea induced by an unfulfilled promise either must be vacated or the promise honored”. (People v Selikoff, 35 NY2d 227, 241, cert den 419 US 1122, citing Santobello v New York, 404 US 257.)
There exists no hard-and-fast rule which prescribes the nature and extent of the fact-finding procedures prerequisite to the disposition of motions to withdraw a plea of guilty *525 previously entered. (People v Tinsley, 35 NY2d 926, 927.) Rather, the Judge hearing the motion must exercise his discretion in affording defendant a reasonable opportunity to advance his claims from which an informed and prudent determination can be rendered. As we stated in People v Tinsley (35 NY2d, at p 927, supra), "[o]nly in the rare instance will a defendant be entitled to an evidentiary hearing; often a limited interrogation by the court will suffice.” (See, also, People v Friedman, 39 NY2d 463, 467; People v Nixon, 21 NY2d 338.)
There is no suggestion that defendant was not given an adequate opportunity to present his contentions. On November 25, 1974, the misunderstanding between the court and defendant’s counsel crystallized. An extensive dialogue ensued at that time, and defendant submitted detailed affirmations in support of his motion. Nor does the record intimate that defendant’s guilty plea was improvident or baseless. (See, e.g., People v Beasley, 25 NY2d 483; People v Nixon, 21 NY2d 338, supra.) Defendant was not a novice in criminal affairs and was, therefore, schooled in the nature of criminal proceedings. Only after consultation with his attorney and detailed explanations by the court did defendant tender his guilty plea. There is, therefore, no basis for assuming that defendant was not cognizant of the legal implications and personal repercussions of his action.
Absent a showing that defendant’s plea was baseless, the Judge to whom the motion is addressed must be entitled to rely on the record to ascertain whether any promises, representations, implications and the like were made to the defendant. (See People v Selikoff, 35 NY2d 227, 241-244, supra; People v Lazore, 59 AD2d 635.)
Judicial recognition of the laudable purposes served by plea negotiations is legion, and further documentation would be mere surplusage. (See, e.g., Blackledge v Allison, 431 US 63, 71; Santobello v New York, 404 US 257, 261, supra; Brady v United States, 397 US 742, 752; People v Selikoff, 35 NY2d 227, 232-235, supra.) The dispositive factor in this case is the need for finality which must be accorded dispositions by guilty plea in order to secure these acknowledged benefits. Only rigorous adherence by the courts to a policy of affording guilty pleas a great measure of finality will immunize plea negotiations from indiscriminate potshots.
As previously noted, the court took painstaking measures to *526 insure that the defendant fully understood the consequences of his guilty plea. Further, the court informed defendant, in emphatic terms, that no promises were being made concerning the sentence defendant could receive. If the court had indeed assured defendant’s counsel that it would follow the prosecution’s sentence recommendation during an off-the-record bench conference, it was incumbent upon defendant’s attorney to place that promise, in unmistakable terms, on the record. While we are sympathetic to counsel’s allegation that the court stated that such formalities were not required, vacatur of defendant’s plea on this ground would serve to undermine the integrity of plea negotiations. Public policy mandates that any remnants of the clandestine atmosphere of the plea negotiating process be eliminated.
The record clearly indicates that the court only assured defendant that it would consider any recommendation made by the prosecutor, listen to any statements of the defendant and his counsel, and study the probation reports prior to imposing sentence. Since the record is totally destitute of any further promises, the Judge properly viewed defendant’s contentions as unfounded. Hence, no hearing was required.
A defendant will not be heard to challenge his guilty plea when the minutes of the plea are unequivocal and refute any contention of an off-the-record promise. In so holding, we reaffirm the position adopted by this court in People v Davidson (42 AD2d 957, affd sub nom. People v Selikoff, 35 NY2d 227, supra). There, the defendant claimed that an off-the-record promise by a Judge, since deceased, assured defendant that he would not sentence defendant to more than four years. Chief Judge Breitel, speaking for a unanimous court, after observing that any claim of an inconsistent off-the-record promise is flatly contradicted by the record, noted that "even if the averments retained some 'scintilla’ of credibility it would merit no judicial recognition because of its effect on the plea negotiation process. The desirability of encouraging exposure on the record of what has been said, what has been agreed, and what conditions exist before performance of a 'promise’ may be relied upon, would be utterly negated.” (35 NY2d, at p 244 [emphasis added].)
This policy of memorializing all promises, representations, implications and the like on the record should not be disregarded in a case, as in the present, where the Judge alleged to have made the promise must ultimately rule upon defendant’s *527 motion to withdraw his guilty plea. Surely, where the record flatly contradicts any claim of an off-the-record promise, no judicial recognition of defendant’s averments will be forthcoming.
We reject defendant’s contention that the Supreme Court’s decision in Blackledge v Allison (431 US 63, supra) dictates a different result. Allison involved the summary disposition of a pro se petition seeking a writ of habeas corpus in Federal district court. Allison alleged, in substance, that his attorney instructed him to answer the questions of the State court Judge in such fashion that his guilty plea would be accepted since his attorney had been assured, presumably by the Judge and prosecutor, that he would only get a 10-year sentence of penal servitude. The court accepted Allison’s guilty plea and sentenced him to 17-21 years in prison.
In determining whether the district court’s summary dismissal of Allison’s petition was proper, the court identified as the critical question "whether [defendant’s] allegations, when viewed against the record of the plea hearing, were so 'palpably incredible,’ [Machibroda v United States, 368 US 487, 495], so 'patently frivolous or false,’ Herman v. Claudy, 350 U. S. 116, 119, as to warrant summary dismissal.” (Blackledge v Allison, 431 US, at p 76, supra.) Two factors were deemed pivotal by the court: first, the nature of the record of the proceeding at which the guilty plea was accepted, and second, the status of the process of plea negotiation at the time the plea was tendered. (Id.)
In Allison, the only record of the proceeding at which the defendant pleaded guilty was a standard printed form consisting of 13 sterile inquiries.* (Id., at pp 66-67.) No transcript was made at this time or at sentencing. As the Supreme Court noted, "[t]he process * * * did nothing to dispel a defendant’s belief that any bargain struck must remain concealed”. (Id., at p 77.) Further, the court observed that plea negotiations in North Carolina at that time were not publicly acknowledged, and therefore shrouded in secrecy.
The surrounding atmosphere of the instant case is in marked contrast to the circumstances faced by the Supreme *528 Court in Allison. Here, the trial court engaged in tedious questioning of defendant to insure that he fully comprehended the consequences of his guilty plea. The record also reveals the painstaking efforts taken by the court to insure that defendant was not prompted to plead guilty by reason of an undisclosed sentence promise. The record is clear. The court advised, indeed encouraged, defendant to disclose any promises which may have been made in exchange for his guilty plea.
Further, it should be noted that the Supreme Court recognized in Allison that not every facially adequate set of allegations entitles a petitioner to an evidentiary hearing. Often times, alternative procedures may be employed by the court in allowing the petitioner to advance his claim. (Blackledge v Allison, 431 US, at pp 80-82, supra.)
As noted above, the defendant in the present case was afforded an opportunity to present his contentions at the proceeding before the court on November 25, 1974. Defendant also submitted detailed affirmations in support of his motion to withdraw his guilty plea. Supplied with this evidence and a complete transcript of the minutes of the plea hearing, the Judge had the essential resources upon which to evaluate fairly and completely the merits of defendant’s contentions.
In sum, we again stress the importance of placing the entire agreement reached by the parties through plea negotiations on the record. Parties must realize that "in all but the most unusual circumstances, no other purported agreement will be recognized.” (People v Selikoff, 35 NY2d 227, 244, supra.) Where, as in the present case, the minutes of the plea are unequivocal and refute any claim of an off-the-record promise, no judicial recognition of defendant’s allegations is warranted. The very integrity of the plea negotiating process so mandates.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.

 The questions from the form which are of particular relevance are:
“8. Do you understand that upon your plea of guilty you could be imprisoned for as much as minimum [sic] of 10 years to life?”
"11. Has the Solicitor, or your lawyer, or any policeman, law officer of anyone else made any promises or threat to you to influence you to plead guilty in this case?”