OPINION OF THE COURT
Reinaldo E. Rivera, J.
The defendant moved this court, inter alia, pursuant to CPL 220.60 for an order permitting him to withdraw his plea of guilty. The decision and order are rendered herein as follows:
I. BACKGROUND
The defendant was arrested on March 20, 1993, in Kings County and charged in a felony complaint with one count of criminal possession of a weapon in the second degree (Penal Law § 265.03); one count of criminal possession of a weapon in the third degree (Penal Law § 265.02 [4]); resisting arrest (Penal Law § 205.30); and menacing in the third degree (Penal Law § 120.15). He was arraigned in local criminal court on March 20, 1993 and released on his own recognizance. The case was adjourned to March 31, 1993 in Criminal Court Part AP-1. The Grand Jury of the County of Kings voted a true bill. An indictment was filed on April 5, 1993. The indictment charged the *756 defendant with one count of criminal possession of a weapon in the second degree (Penal Law § 265.03); one count of criminal possession of a weapon in the third degree (Penal Law § 265.02 [4]); and one count of menacing in the second degree (Penal Law § 120.14). The defendant was arraigned in Supreme Court Part ACA 360 on April 6, 1993. The arraignment court ACA 360 continued the securing order of recognizance of the local criminal court. The case was adjourned to Criminal Term, Part 6, for further proceedings. Defendant was represented at arraignment by the Legal Aid Society. Prior to defendant’s arraignment, defendant was interviewed by a representative of the Criminal Justice Agency. Defendant gave his name as Michael Carlton and told the interviewer that this was his first arrest and that he had no prior convictions or open cases.
On October 1, 1993, defendant pleaded guilty in Criminal Term, Part 6, to attempted criminal possession of a weapon in the second degree (Penal Law §§ 110.00, 265.03). In exchange the People made a sentence recommendation of 30 days’ incarceration and 5 years’ probation. At the time the plea was taken the defendant was represented by the Legal Aid Society. He has since retained private counsel to prosecute the application now before the court. At the time the plea was accepted, neither the court nor the People were aware that defendant had prior felony convictions in North Carolina.
The defendant was advised that as a result of this plea and conviction, in the event of a future felony conviction he would be subject to increased or additional punishment as a second felony offender.
Defendant reported to Probation for the PSI interview on October 20, 1993. Probation had not yet received defendant’s interstate criminal history. Defendant stated to Probation that he had never previously been arrested anywhere. Prior to the sentence date of November 10, 1993, the Department of Probation received defendant’s criminal history, which revealed the prior felony convictions in North Carolina, to wit, involuntary manslaughter, assault with a deadly weapon and sale of cocaine. Based on the nature of his prior convictions and the defendant’s lack of forthrightness regarding the extent of his criminal record, the Department of Probation evaluated him as a dangerous and disingenuous individual. Probation’s recommendation was that incarceration was mandatory because defendant appeared to be a second felony offender.
On the sentence date, November 10, 1993, the court received the presentence report becoming aware for the first time of *757 defendant’s convictions in North Carolina. These convictions appeared to render defendant a second felony offender for the instant conviction. No predicate felony statement was filed by the People at that time. The defendant appeared in court that morning. Prior to his case being called, his attorney advised him that the court had knowledge of his previous convictions in North Carolina. Defendant thereupon left the court. He was not present when the case was called. A bench warrant was issued at approximately 4:30 p.m,
On March 14, 1996, 28 months after absconding from the court, defendant was returned involuntarily on the warrant. The People determined that defendant was a predicate felon based on the North Carolina convictions. On June 20, 1996, the People filed a predicate felony statement. On September 18, 1996 defendant filed the instant motion.
II. QUESTION PRESENTED
Is a predicate /violent felon who misrepresents his status in order to avail himself of a favorable plea disposition and sentence entitled to have his plea vacated upon the discovery of his true prior criminal history which renders the promised sentenced illegal as a matter of law?
III. DISCUSSION AND LEGAL ANALYSIS
A. The Motion to Withdraw the Guilty Plea
In the case at bar the defendant argues that he is entitled to be restored "to the position he would have been in at the present date and time, had he never made the plea agreement.” He wants this court to declare his plea of guilty a nullity. The defendant claims that the plea of guilty was induced by a material misrepresentation of fact by the prosecution in that the People knew or should have known of the defendant’s prior felony convictions out of State barring the imposition of the recommended sentence.
This court is being asked to apply principles of equitable remedy in contract law upon the theory that the defendant justifiably relied to his detriment upon a material misrepresentation by the People. Therefore, defendant argues, the contract (plea) should be canceled and the defrauded party (defendant) should be restored his consideration, to wit, returned to the position he was in prior to entering into the contract. Defendant cites several cases in support of his position, to wit, Gervasio v Di Napoli (134 AD2d 235 [2d Dept 1987]); Goins v Atwood (204 *758 App Div 439 [1923]); Slater v Slater (240 NY 557 [1925]); and Copeland v Hugo (221 App Div 779). These cases involving the application of equitable remedies in contract law are inapposite in plea bargain situations. His reliance on equity and the common law is misplaced.
“Application to plea negotiations of contract law is incongruous. The strong public policy of rehabilitating offenders, protecting society, and deterring other potential offenders presents considerations paramount to benefits beyond the power of individuals to 'contract’.” (People v Selikoff, 35 NY2d 227, 238 [1974].)
In any event, his points of argument are untenable and indefensible. It is blatantly disingenuous for a party to allege fraud in the inducement when he was in a better position to know the truth of the fact allegedly misrepresented.
Clearly, a motion to withdraw a guilty plea must be based upon some evidence of possible innocence or of fraud, mistake, coercion or involuntariness in the taking of the plea (People v Greene, 208 AD2d 950 [2d Dept 1994]; People v De Jesus, 199 AD2d 529 [2d Dept 1993]), and defendant should be afforded a reasonable opportunity to advance his claims. (People v Tinsley, 35 NY2d 926 [1974].)
In the case at bar, the defendant has had ample opportunity to state the basis for his application to withdraw his plea, therefore no formal evidentiary hearing was required to be held by this court. (People v Frederick, 45 NY2d 520 [1978]; People v Fiumefreddo, 82 NY2d 536, 543 [1993]; People v Lisbon, 187 AD2d 457 [2d Dept 1992].)
The basic rule is clear, namely, if a guilty plea is induced by fraud and misrepresentation, the defendant will not be held to the plea. (People v Selikoff, supra.) Significantly, the reverse applies with equal force; the courts will not countenance fraud by a defendant to obtain acceptance of a plea. (Supra.)
The defendant’s allegations are unsubstantiated. There is nothing on this case record to indicate that the People were aware of the defendant’s prior felony convictions, nor to warrant a finding that they acted in bad faith. The defendant’s contention that the People would negotiate a plea bargain in the knowledge that it would be doomed to fail is illogical and absurd.
Interestingly, in asking the court to charge the People with constructive knowledge of his prior felony conviction, the defendant is acknowledging that the People did not have actual *759 knowledge of his predicate status. This further weakens his claim that the People perpetrated a fraud on him.
A defendant’s contention that the People have an affirmative obligation to procure her complete interstate criminal history as a condition precedent to plea bargaining negotiations would, under other circumstances, call for serious consideration by the court. In the case at bar, however, in light of the defendant’s deceptive and misleading conduct, to wit, use of an alias and misrepresentation of his true criminal history to officials of the court, such contention lacks substance, merit and plausibility. Accordingly, defendant has failed to advance any substantial basis to support a claim of fraud by the People in misrepresenting to defendant his own criminal history.
B. The Santobello-Selikoff-Frederick Doctrine/CPL 220.60
Our State’s jurisprudence in the area of plea bargains is fertile. The premises upon which the law in this area is based are sound, practical and fair. The basic tenets are clear and straightforward. Disposition of criminal charges after plea negotiations is an essential component of the administration of justice. (Santobello v New York, 404 US 257; People v Seaberg, 74 NY2d 1, 7 [1989]; People v Avery, 85 NY2d 503 [1995].)
"Plea bargaining is a practice vital to the efficient administration of the criminal justice system (see, People v Seaberg, 74 NY2d 1, 7), and 'an integral part of the plea bargaining process is the negotiated sentence’ (see, People v Farrar, 52 NY2d 302, 306). Plea and sentence negotiation further important policy considerations, conserving law enforcement, judicial and penal resources, and permitting the parties to avoid the uncertainties inherent in the lengthy process of charge, trial, sentence and appeals, thereby 'starting the offender on the road to possible rehabilitation’ as soon as practicable (see, People v Selikoff, 35 NY2d 227, 233).” (People v Avery, supra, at 506.)
The disposition of a motion to withdraw a guilty plea rests within the sound discretion of the trial court. (Santobello v New York, 404 US 257, supra; People v Rogers, 82 AD2d 731 [1st Dept 1981], affd 56 NY2d 552 [1982]; People v Frederick, 45 NY2d 520, supra; People v Tinsley, supra; People v Soto, 228 AD2d 707 [2d Dept 1996]; People v Sears, 204 AD2d 578 [2d Dept 1994]; People v Lisbon, 187 AD2d 457, supra.)
CPL 220.60 provides that the court in its discretion may permit a defendant who has entered a plea of guilty to withdraw such plea. "Withdrawal here is not to be had for the *760 asking. The motion to withdraw is addressed to the discretion of the court and must be supported by a showing that the defendant was deprived of some right”. (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 220.60, at 110.) "Only rigorous adherence by the courts to a policy of affording guilty pleas a great measure of finality” will secure the acknowledged benefits of plea negotiations. (People v Frederick, supra, at 525.)
It is well established that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.” (Santobello v New York, supra, at 262.) In Santobello, the defendant’s guilty plea was induced by the prosecutor’s promise to make no sentence recommendation. The Supreme Court found that the prosecutor’s subsequent recommendation of incarceration was a breach of the agreement requiring either specific performance of the agreement or withdrawal of the plea.
In evolutionary fashion out of Santobello (supra) the New York Court of Appeals enunciated the general rule in the case of People v Selikoff (35 NY2d 227, supra). Where a plea is induced by a promise which due to circumstance or law cannot be fulfilled, the defendant must be given the option of withdrawing the plea. (Santobello v New York, 404 US 257, supra, upon remand 39 AD2d 654; People v Frederick, 45 NY2d 520, supra; People v Selikoff, supra; People v Powell, 105 AD2d 761 [2d Dept 1984].) Without question, this principle and general rule was not. intended, nor did it operate in Selikoff, to secure the defendant a benefit greater than that to which he is entitled. The rule has as its purpose and it was intended to protect and preserve the integrity of the plea bargaining process.
In the instant case the intended outcome cannot be fulfilled. Specific performance of the sentence recommendation is not authorized because the defendant is a predicate felon not a first-time offender as the court was originally led to believe. Accordingly, imposition of the promised sentence would be illegal as a matter of law. (CPL 400.21; see, People v Scarbrough, 66 NY2d 673 [1985].) However, to permit the defendant to withdraw his plea would be contrary to the public policy considerations espoused in People v Selikoff (supra) and its progeny.
In People v Selikoff (supra) the Court of Appeals held that any sentence promise is conditioned upon its being lawful and *761 appropriate in light of the presentence report and it was of no consequence that such condition was not made explicit. The defendant had no legitimate right to imposition of the promised sentence.
In People v Campbell, decided with People v Selikoff (supra), the Court refused to allow the integrity of the plea negotiation process to be threatened by a claim that an off-the-record promise had induced the plea when defendant was under a compelling duty to reveal such promise, but remained silent. The court below properly imposed a jail sentence without permitting defendant an opportunity to withdraw his plea.
In the third case decided with People v Selikoff (supra), People v Davidson, the Court stated that defendant’s claim of an off-the-record sentence promise was incredible, but that even if it contained some scintilla of credibility, it would merit no judicial recognition because of its effect on the plea negotiation process.
In People v Frederick (45 NY2d 520, supra), the Court reaffirmed its refusal to allow defendants whose conduct has been less than straightforward to trifle with the plea bargaining process. The Court held that vacatur of defendant’s plea would serve to undermine the integrity of plea negotiations. A defendant "schooled in the nature of criminal proceedings” will not be permitted to take "indiscriminate potshots” by claims of promises flatly contradicted by the record. (Supra, at 525.) "[Dispositions by guilty plea” must be afforded "a great measure of finality”. (Supra.)
In Campbell (supra) and Davidson (supra), as well as in Frederick (supra), the defendants’ silence about the claimed off-the-record promises was misleading and deceptive. The Court refused to countenance the deception by allowing withdrawal of the pleas. While arbitrariness or trifling with the legitimate expectations of defendants is unacceptable, a defendant who has misled or lied to the court will not be permitted to benefit by such conduct. (People v Selikoff, supra.)
The defendant does not claim that he was unaware of the legal status and magnitude of his earlier convictions. Clearly, his conduct in lying to the Department of Probation and the Criminal Justice Agency and absconding from court demonstrates his awareness of the consequences of the discovery of his prior convictions, to wit, the imposition of increased penalties. In addition, during the plea proceeding, defendant was advised that his guilty plea would serve as a basis for sentencing him as a second felony offender, should he commit another *762 felony. Thus, defendant was aware not only that the court was under the impression that defendant was a first felony offender, but also that second felony offenders are subject to increased or additional punishment.
Moreover, the circumstances of this case do not suggest a mutual mistake of fact and law as occurred in People v Nettles (30 NY2d 841 [1972]). That case involved a poorly educated defendant with a tubercular condition who did not understand the legal effect of his earlier convictions. In this case, the numerous letters written on defendant’s behalf and submitted as exhibits in his motion portray him as well traveled, a talented musician and an intelligent and articulate individual.
It is axiomatic that a defendant who intentionally misleads the court to obtain a more lenient disposition of criminal charges will not be permitted to benefit by his deceit. (People v Floyd, 177 AD2d 310 [1st Dept 1991]; People v Barnes, 160 AD2d 342 [1st Dept 1990]; People v Da Forno, 73 AD2d 893 [1st Dept 1980]; People v Simpson, 162 Misc 2d 480 [Sup Ct, Richmond County 1994]; People v Martinez, 158 Misc 2d 208 [Sup Ct, Kings County 1993].) Clearly, if withdrawal of a plea would give a deceitful defendant an undue benefit, then to permit withdrawal would undermine the integrity of the plea negotiation process.
C. The Plea Colloquy Requirements
The defendant in the case at bar further charges that the trial court failed to properly inform the defendant of the ramifications of his entering the plea of guilty, including the fact that a harsher sentence could be imposed if it was discovered that he was a predicate felon and/or that the court was not bound by the prosecutor’s sentencing recommendation or promise.
A suggestion has been made that, where no express provision is made in the plea agreement for imposition of a different sentence if the promised sentence turns out to be legally impossible, the court may not impose a different sentence, but must permit the defendant to withdraw his plea. (People v Benard, 164 Misc 2d 323 [Sup Ct, NY County 1995].)
However, in Selikoff (supra), the defendant was given the option to withdraw his plea, not because the court failed to warn him about the possibility of a greater sentence, but because if the court had acceded to defendant’s insistence that the promised sentence be performed, the defendant would have received more than that to which he was entitled. In fact, the *763 failure to advise the defendant in Selikoff about the possibility of an increased sentence was of no consequence. The Court made clear in Selikoff that any sentence promise is impliedly conditioned upon its being lawful and appropriate in light of subsequent information obtained from reliable sources.
An inflexible adherence to the proposition that failure or inability to fulfill a promise limits the court to one of two options, to wit, vacatur of the guilty plea or fulfillment of the promise would in some instances produce results inconsistent with well-established goals of public policy. "[A] mature jurisprudence does not rely only on fixed rules but on broad discretions controlled by flexible standards * * * 'Law is something more than an aggregate of rules. Hence enforcement of law is much more than applying to definite detailed states of fact the pre-appointed detailed consequences’.” (People v Nixon, 21 NY2d 338, 354, quoting Pound, Criminal Justice in America, at 36 [1930].)
In all the aforementioned cases, the critical, controlling and dispositive consideration was to achieve a fair result and to preserve the integrity of the plea bargaining process. It would appear and impress as contrary to the fundamental policy consideration, consistently and repeatedly espoused by our State’s highest tribunal, to limit and to handicap the trial court to two monolithic straight] acketing alternatives; either vacatur of the guilty plea or imposition of the promised sentence if it would result in a defendant, "sophisticated in the criminal process, who has misled, or lied to the court” (see, People v Selikoff, supra, 35 NY2d, at 242), receiving more than that to which he is entitled.
If the court advises a defendant and makes it an explicit condition of the plea, that should it develop that defendant had a prior felony conviction, a different or additional sentence would be imposed, the defendant cannot claim the court violated the plea agreement if and when the court imposes additional time. (People v Atkinson, 127 AD2d 841 [2d Dept 1987]; People v Mack, 107 AD2d 822 [2d Dept 1985]; People v Da Forno, supra.) In our case the court did not warn this defendant that if he had a prior felony conviction he would be subject to an enhanced sentence. The reason for this is self-evident. The negotiated plea bargain was predicated on the good-faith belief by the court and the People that the defendant was a first-time offender.
There is no set or uniform procedure or infallible checklist for a plea colloquy. But it is well settled that even *764 when an explicit condition as just described is missing or never contemplated a guilty plea will not be found invalid because the court failed to specifically enumerate all the rights to which the defendant was entitled. (People v Harris, 61 NY2d 9 [1983]; People v Jones, 183 AD2d 918 [2d Dept 1992].)
The Court of Appeals has consistently rejected a formalistic approach to guilty pleas, holding repeatedly that there is no requirement for a uniform mandatory catechism for pleading defendants. (People v Fiumefreddo, 82 NY2d 536, supra; People v Harris, supra; People v Nixon, supra.) Certain basic information must be conveyed to a pleading defendant. Before accepting a plea the court should ascertain that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. The defendant must be advised that by pleading guilty he or she is waiving the right to a jury trial and the right against self-incrimination. (Boykin v Alabama, 395 US 238.) The defendant must be advised of the various penal sanctions to which he or she is made subject. The court should determine whether there is a factual basis for the plea.
In view of the variety of circumstances, however, the extent of the colloquy at a plea proceeding is best left to the discretion of the court. (People v Nixon, supra.) "There are knowledgeable and criminally experienced defendants and there are those who are lacking in intellect or experience, or both.” (Supra, at 353.) Therefore, "a sound discretion exercised in cases on an individual basis is best rather than to mandate a uniform procedure”. (Supra, at 355.) "It should never be enough to undo a plea because of some omission in inquiry at the time of plea without a showing of prejudice”. (Supra.)
Of paramount importance in the plea negotiation process is fairness in securing an agreement between the accused and the prosecution. The primary focus in the appellate decisions involving discovery of a defendant’s predicate status subsequent to the plea has not been whether a particular condition was specifically provided for in the plea agreement, but whether a defendant who has perpetrated a fraud upon the court should be permitted to benefit therefrom. (See, People v Rogers, 82 AD2d 731, supra; People v Barnes, 160 AD2d 342, supra; People v Powell, 105 AD2d 761, supra.)
It is clear that the courts will reject attempts by defendants who intentionally misled the court to enforce inappropriate or unlawful sentence promises or to escape the more severe consequences the defendant sought to avoid through deception *765 and fraud. To permit the defendant in this case, who lied to representatives and officials of the criminal justice system, absconded from court and remained a fugitive, to withdraw his plea would be inconsistent with decisional authority, contrary to public policy and would undermine the integrity of the plea negotiation process.
IV. CONCLUSIONS
The decision herein is predicated upon the defendant’s violation of the condition imposed at the plea that he return to court for sentence. Although defendant came to court on his sentence date, he absconded before his case was called and remained a fugitive for more than two years. The court is therefore neither required to permit the defendant to withdraw his plea nor bound by the promised sentence.
However, the other aspects of the factual scenario presented by this case compel this court to further discourse on the issues. Their examination and reassessment is vital because of their concomitant legal and practical consequences and implications. In so doing this court recognizes that an inflexible ritualistic catechism for pleading defendants does not serve the administration of justice.
The Santobello-Selikoff-Frederick doctrine is the jurisprudential beacon guiding our courts in this plea bargain context. It affords a well-measured balance between fairness in the resolution of the plea bargain and finality and integrity in the process. We must nonetheless be cautious not to focus too intensely on this sound precept so as to blindly allow a defendant with unclean hands to use it in shield-like fashion and manipulate the courts with arrogant impunity. Precious valuable time, effort and resources are wasted on pure unadulterated persiflage.
The defendant’s claims are, on the facts and circumstances at bar, fallacious and frivolous. Unfortunately, applications such as this are encouraged and arise because of real or apparent gaps in the jurisprudential continuum of the Santobello-Selikoff-Frederick doctrine.
The dynamic of the common-law approach to case-by-case determination is unquestionably appropriate to the life of the law. It must be clear, unequivocal, flexible, predictable and foreseeable. More to the point, no one may be allowed to subvert the process in attempting to advance their interests, lawful or otherwise. We have a responsibility to safeguard, promote and ensure arm’s length dealings and unyielding respect for the court system, the societal canvas in which the law creates its artful evolution.
*766 As a matter of public policy, a criminal defendant, who by act or omission affirmatively misrepresents his true criminal history in order to avail himself of a more lenient, albeit illegal sentence, not otherwise available to him, once discovered may not be allowed to benefit from his wrongdoing. In this context, the defendant must understand a priori that he may not escape the consequences of a legal sentence as a predicate felon. As a matter of established precedent he forfeits the option of withdrawing his plea. Therefore, once unclean hands is established, an otherwise proper and valid plea should stand.
Clearly, the Court of Appeals will not permit the delicate process of plea negotiations to be assailed by a defendant’s later claims that the plea was induced by a promise when the defendant misled the court. A defendant who willfully conceals information cannot be said to have a legitimate expectation that upon discovery of that information, the court is nevertheless mandated to abide by its promise or to permit withdrawal of the plea. If fairness dictates that a defendant cannot be held to a plea induced by a promise which cannot be fulfilled, the reverse ought to apply with equal force, to wit, the defendant should not be permitted to reap the benefit of a more lenient sentence induced by the defendant’s deceptive and misleading conduct, or to unravel the finality and integrity of an otherwise valid guilty plea.
V. DECISION
The defendant’s motion to withdraw his previously entered plea of guilty is denied in all respects.
[Portions of opinion omitted for purposes of publication.]