OPINION OF THE COURT
Reinaldo E. Rivera, J.
I. INTRODUCTION
The defendant moved this court pursuant to CPL 380.30 (1) to dismiss the criminal charges pending against him on the ground that a delay of 18 years between his plea of guilty on June 2, 1978 and return to court for sentencing on an outstanding warrant was unreasonable and resulted in the court’s loss of jurisdiction over the defendant, and, in the alternative, for a fact-finding hearing on that issue; defendant further moved to be sentenced to probation as promised or to be permitted to withdraw his guilty plea, to declare the People’s sentence recommendation of 31/2 to 7 illegal, in violation of applicable guidelines, and to permit his mental health expert to examine the probation report. The People oppose the motion and recommend that defendant be sentenced to 31/2 to 7 years’ incarceration.
II. FACTUAL BACKGROUND AND HISTORY
Defendant was indicted on April 26, 1978 for rape in the first degree and three counts of sexual abuse in the first degree for an incident which occurred on March 29, 1978. On June 2, 1978, before the Honorable Larry Vetrano, the defendant pleaded guilty to sexual abuse in the first degree. Judge Vetrano stated on the record that "subject to reading a probation report * * * I am going to consider placing you on probation for a period not to exceed five (5) years.”
On September 14, 1978, the sentencing date, the defendant failed to appear and a bench warrant was issued.
Defendant’s criminal history reports convictions in Texas in 1979 for rape and attempted rape for which he was sentenced to 17 years and 10 years’ incarceration respectively. He also *139 pleaded guilty in Texas in 1986 to sexual assault and was sentenced to 12 years. Defendant has a number of other arrests both prior to the instant guilty plea and during the period of abscondence. Moreover, defendant’s RAP sheet reports multiple names or aliases used by the subject, to wit, Robert WELCH, ROBERT B. WELSH, KEVIN BARRY DUNN, KEN TRAZARRALJ different NYSID numbers and Social Security numbers; three different dates of birth, as well as seven different residence addresses under different names in Brooklyn, Yonkers and New York City from 1975 through 1996; and three different States, Oklahoma, New York and California as place(s) of birth.
The defendant wás returned to this court, on the open bench warrant, on December 18, 1996, following his arrest for criminal sale of a controlled substance in the seventh degree in New York County, on November 9, 1996.
III. DEFENDANT’S LEGAL ARGUMENTS

Plea Withdrawal

Defendant requests that in the event the court cannot sentence defendant to the promise of five years’ probation, he be permitted to withdraw his guilty plea.
As a general rule, if a court is unwilling or unable to sentence a defendant in accordance with a promise made as part of a plea bargain, the defendant will be permitted to withdraw the plea. (Santobello v New York, 404 US 257; People v Selikoff, 35 NY2d 227 [1974].)
Every disposition of criminal charges by guilty plea is implicitly conditioned upon the promised sentence being legal and appropriate in light of the presentence report. (People v Selikoff, supra.) If at the time of sentence the court determines that the promised sentence is inappropriate, then the defendant must be given the option to withdraw the plea and be returned to the same position he was in prior to pleading guilty, the status quo ante. This court is aware of the plethora of appellate court decisions which hold that "even though the defendant failed to appear for sentencing and was subsequently arrested, the sentencing court could not impose a sentence greater than that bargained for without first affording the defendant an opportunity to withdraw the plea and to stand trial”. (People v Michael, 190 AD2d 758 [2d Dept 1993].) The court’s inquiry and analysis must not and does not end there.
When the court’s inability or unwillingness to impose the promised sentence is brought about by the misconduct of the *140 defendant, the defendant will not be permitted to withdraw the plea if withdrawal places the defendant in a more advantageous position than he was in prior to pleading guilty. Courts have repeatedly held that defendants who manipulate and deceive the court will not be permitted to benefit by their misconduct. (People v Floyd, 177 AD2d 310 [1st Dept 1991]; People v Barnes, 160 AD2d 342 [1st Dept 1990]; People v Da Forno, 73 AD2d 893 [1st Dept 1980]; People v Simpson, 162 Misc 2d 480 [Sup Ct, Richmond County 1994]; People v Lopez, 158 Misc 2d 208 [Sup Ct, Kings County 1993].) Clearly, if withdrawal of a plea would give a deceitful defendant an undue benefit, then to permit withdrawal would undermine the integrity of the plea negotiation process.
If defendant is permitted to withdraw his guilty plea he will receive a greater benefit than is appropriate. He would not be returned to status quo ante. His position would now be decisively more advantageous than it was at the time of the plea. The prejudice to the People would be irreparable. Eighteen years have elapsed since the defendant was convicted of the instant offense. It is unlikely that the People will be able to produce the witnesses and proceed to trial on this indictment. It was the defendant’s conduct in failing to return to court for sentence and fleeing to another State that prevented the court from imposing sentence and which nullified the option to permit the defendant to withdraw his guilty plea and proceed to trial. To grant the defendant’s request would in effect enable him and permit him to effectively manipulate the criminal justice system in order to escape any consequence and punishment for the crimes charged in this indictment to have been committed by him on March 29, 1978, to wit, the forcible rape of a 19-year-old woman, Debbie R., the defendant having pleaded guilty to sexual abuse in the first degree, to wit, sexual contact by forcible compulsion.

Sentence

Defendant contends that under the terms of the plea bargain he must be sentenced as promised or be permitted to withdraw his plea. The plea minutes bear out defendant’s assertion that the court stated that if it could not impose the promised sentence, he would be given the opportunity to withdraw his plea of guilty.
The defendant also correctly points out that the court did not condition its promise on defendant’s returning to court for sentence or inform defendant that he would be subject to increased punishment for failure to appear for sentence.
*141 The Santobello-Selikoff-Frederick doctrine (People v Frederick, 45 NY2d 520) sets forth the principles, objectives and parameters of our State’s jurisprudence in the field of plea bargaining. This court, however, will not countenance the perversion or corruption of these rules of law, nor will it apply a myopic, superficial, or irrational analysis to them. The defendant may not be permitted to benefit from his own wrongdoing. The defendant himself has created the conditions which negate the viability of the option to withdraw his guilty plea and proceed to trial.
It is axiomatic that a defendant who pleads guilty must return to court for sentence. It is advisable to expressly admonish and warn all defendants after a guilty plea concerning the consequences of the failure to return to court for sentence. Each case, however, must be adjudged on its own facts, on its own merits.
It would be naive and disingenuous for any criminal defendant who stands convicted of a felony to expect, anticipate or assume that there will be no consequences for his misfeasance and/or nonfeasance, if these constitute clear and unequivocal violations of the rule of law. It is self-evident that a defendant, who at the court’s discretion has been permitted to remain at liberty pending final disposition of the charges, is required to return to court for all appearances. The requirements that defendant return to court and refrain from committing additional crimes are implicit conditions in any plea bargaining arrangement. It defies common sense and fundamental concepts of justice to hold otherwise. It is ludicrous to operate on the assumption that a defendant who has successfully negotiated a beneficial plea arrangement, acceptable to the court, cannot be expected to understand, absent an explicit warning, that failure to comply with these implicit conditions will affect the plea arrangement.
This court will adhere to the appropriate precedent and will not equivocate nor elevate form over substance. As this court observed (People v Carthen, 171 Misc 2d 754, 763-764):
"An inflexible adherence to the proposition that failure or inability to fulfill a promise limits the court to one of two options, to wit, vacatur of the guilty plea or fulfillment of the promise would in some instances produce results inconsistent with well-established goals of public policy. '[A] mature jurisprudence does not rely only on fixed rules but on broad discretions controlled by flexible standards * * * "Law is something more than an aggregate of rules. Hence enforcement of law is *142 much more than applying to definite detailed states of fact the pre-appointed detailed consequences”.’ (People v Nixon, 21 NY2d 338, 354, quoting Pound, Criminal Justice in America, at 36 [1930].)
"In all the aforementioned cases, the critical, controlling and dispositive consideration was to achieve a fair result and to preserve the integrity of the plea bargaining process. It would appear and impress as contrary to the fundamental policy consideration, consistently and repeatedly espoused by our State’s highest tribunal, to limit and to handicap the trial court to two monolithic straight]acketing alternatives; either vacatur of the guilty plea or imposition of the promised sentence if it would result in a defendant, 'sophisticated in the criminal process, who has misled, or lied to the court’ (see, People v Selikoff, supra, 35 NY2d, at 242), receiving more than that to which he is entitled * * *
"There is no set or uniform procedure or infallible checklist for a plea colloquy. But it is well settled that even when an explicit condition as just described is missing or never contemplated a guilty plea will not be found invalid because the court failed to specifically enumerate all the rights to which the defendant was entitled. (People v Harris, 61 NY2d 9 [1983]; People v Jones, 183 AD2d 918 [2d Dept 1992].)
"The Court of Appeals has consistently rejected a formalistic approach to guilty pleas, holding repeatedly that there is no requirement for a uniform mandatory catechism for pleading defendants. (People v Fiumefreddo, 82 NY2d 536, supra; People v Harris, supra; People v Nixon, supra.)”
IV. CONCLUSIONS
Under the facts of this case, the court’s failure to explicitly warn the defendant about the consequences of his failure to return to court is not dispositive. Due to the defendant’s own conduct in failing to return to court for sentence, his flight, fugitive status and subsequent criminal history, he is no longer in a position to request nor is he now entitled to the option of withdrawal of his guilty plea and to proceed to trial. The probation report submitted to the court in 1978 standing alone undoubtedly justifies the sentencing court not imposing a sentence of probation. The defendant is not entitled to such a sentence. In view of defendant’s apparent disregard for the law and his willingness to place his own interests above those of society, the court is strongly disinclined to impose the promised sentence of probation.
*143 The authorized maximum sentence in this case, for this offense, sexual abuse in the first degree, a class D felony, is 21/s to 7 years’ incarceration, not 31/2 to 7 years.
V. DECISION
For the reasons stated in this opinion, the defendant’s motion to dismiss the charges for loss of jurisdiction is denied. The defendant’s motion for a fact-finding hearing is likewise denied. The defendant’s application to withdraw his plea is denied. The defendant’s motion to be sentenced to probation as promised is hereby denied. The defendant will be sentenced in accordance with the proper statutory sentencing guidelines.