OPINION OF THE COURT
Joseph Fisch, J.
On October 3, 1997, the defendant, on probation in connection with a prior assault conviction, attacked Chris Kelleher, an emergency medical technician, in a park in the Bronx. Ortiz stabbed Kelleher several times in the chest, inflicting two puncture holes in his shirt and a l-to-UA-inch slash of his bulletproof vest. It was the vest which saved his life.
Ortiz was indicted on charges of attempted murder, assault, and related charges. On April 8, 1998, following a jury trial, he was acquitted of attempted murder and convicted of attempted assault in the second degree.
On May 12, 1998, the court served notice (Notice) upon the parties of its intention to conduct a hearing to determine *785 whether Ortiz should be adjudicated a persistent felony offender, and if so, whether a persistent felony offender sentence should be imposed. (CPL 400.20; Penal Law § 70.10.) The hearing commenced on June 4, 1998 and continued for six days, concluding on June 25, 1998.
On June 25, 1998, the court adjudicated Ortiz a persistent felony offender and sentenced him to a term of 15 years to life.[1] This opinion sets forth the bases for said determination and sentence.
BACKGROUND
The principle of imposing enhanced sentences upon repeat offenders is not new to the law. New York State was the first in the country to enact such legislation, to wit, chapter 30 of the Laws of 1796.
While statutory provisions vary from State to State, the laws of virtually all have provisions which either mandate or permit an increased sentence based upon a prior conviction or convictions. Approximately one half of the States authorize life sentences upon third or fourth convictions.[2] The New York Persistent Felony Offender Law addresses two categories of such offenders: (1) one convicted, within 10 years, of three violent felonies (Penal Law § 70.08), and (2) a defendant convicted of three nonviolent felonies, or a combination of violent and nonviolent felonies, provided all three are not violent (Penal Law § 70.10).
*786 THE COURT’S NOTICE AND STATEMENT
CPL 400.20 sets forth the procedure for determining whether a defendant should be sentenced as a persistent felony offender. The section states in pertinent part:
“1. Applicability * * * [s]uch sentence may not be imposed unless * * * the court * * * (b) is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct are such that extended incarceration and lifetime supervision of the defendant are warranted to best serve the public interest * * *
“3. Order directing a hearing * * * [t]he court must annex to and file with the order a statement setting forth the following * * *
“(b) The factors in the defendant’s background and prior criminal conduct which the court deems relevant for the purpose of sentencing the defendant as a persistent felony offender.”
The Notice and Statement, served pursuant to CPL 400.20, identified the following three felony convictions which the court was to consider:
1. April 9, 1976 — A New York State conviction of robbery, third degree, for which the defendant was sentenced to four years. He was mandatorily released on September 19, 1977.
2. March 20, 1980 — A California felony conviction of burglary. Defendant was sentenced to two years.
3. April 8, 1998 — Defendant’s conviction before this court of attempted assault, second degree, an E felony.
The Notice and Statement informed Ortiz that the court was weighing his extensive criminal record, dating back to 1964, which includes 23 convictions in New York State and 10 in the State of California.
PENAL LAW §§ 70.10 AND 70.08
The New York Persistent Felony Offender Law consists of two basic parts: Penal Law § 70.08, which deals with violent felony convictions, and Penal Law § 70.10. Penal Law § 70.10, as is relevant to this case, provides:
“1. Definition of persistent felony offender.
“(a) A persistent felony offender is a person, other than a persistent violent felony offender as defined in section 70.08, who stands convicted of a felony after having previously been convicted of two or more felonies, as provided in paragraphs (b) and (c) of this subdivision.
*787 “(b) A previous felony conviction within the meaning of paragraph (a) of this subdivision is a conviction of a felony in this state, or of a crime in any other jurisdiction, provided:
“(i) that a sentence to a term of imprisonment in excess of one year, or a sentence to death, was imposed therefor” (emphasis added).
Penal Law § 70.10 is significantly different from Penal Law § 70.08. Penal Law § 70.08 mandates that upon the third conviction of a violent felony within a 10-year period, a court must sentence defendant as a persistent violent felony offender. The court has no sentencing discretion under section 70.08. Section 70.10, however, contains no 10-year time limitation. Most significantly as well, the definition of what constitutes a felony conviction for purposes of sentencing under section 70.10 is:
“a felony in this state, or * * * a crime in any other jurisdiction provided * * *
“that a sentence to a term of imprisonment in excess of one year * * * was imposed therefor” (Penal Law § 70.10 [1] [b] [i] [emphasis added]).
Moreover, unlike section 70.08 which mandates a persistent felony sentence upon the third violent felony conviction, under section 70.10, three felony convictions, by themselves, is not dispositive. The court must also find that: “the history and character of the defendant and the nature and circumstances of his criminal conduct are such that extended incarceration and lifetime supervision of the defendant are warranted to best serve the public interest.” (CPL 400.20 [1]; accord, Penal Law § 70.10 [2].)
THE PROCEDURE FOR THE HEARING
A discretionary persistent felony hearing progresses in two stages. First, the People must prove, beyond a reasonable doubt, by evidence legally admissible at trial, that the defendant, presently convicted of a felony, has been previously convicted of two or more felonies. (CPL 400.20 [5].) The People need not prove that a previous conviction was constitutionally obtained, however, since that burden lies with the defendant. (People v Harris, 61 NY2d 9, 15 [1983].) To carry his burden, the defendant must present substantial evidence to contradict the presumption of regularity accorded to previous felony convictions. (People v Harris, supra, 61 NY2d, at 16; People v Smyth, 3 NY2d 184 [1957]; People v Richetti, 302 NY 290 [1951].)
*788 In the second stage, the court must determine whether the “history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest”. (Penal Law § 70.10 [2].) In exercising its discretion, the court may consider “any relevant evidence, not legally privileged, regardless of admissibility under the exclusionary rules of evidence, and the standard of proof with respect to such matters shall be [by] a preponderance of the evidence.” (CPL 400.20 [5].)
THE HEARING
Phase I: The Three Felonies
The People placed into evidence the three felony convictions that, they contended, constituted defendant’s eligibility as a persistent felony offender:
(a) The April 8, 1998 Attempted Assault Second Degree Conviction Before this Court
As noted supra, on October 3, 1997, the defendant attacked Chris Kelleher, an emergency medical technician, while Kelleher was bending over, lending medical aid to an injured man who lay on the ground bleeding. The defendant came upon Kelleher from the rear, knocked him to the ground and stabbed him several times in the chest.
In his trial testimony, Ortiz admitted that, on October 3, 1997, because of an alleged offense to his wife and injury to himself, he left his home armed with an 18-inch knife, because he “wanted to get even” and prove that “he was a man.”
(b) The March 20, 1980 California Burglary Conviction
On March 6, 1980, the defendant pleaded guilty in California Superior Court, County of Los Angeles, to the crime of burglary, a felony under California law. On March 20, 1980, he was sentenced to a term of incarceration of two years.
The Defense Attack Upon the 1980 California Conviction
The defense admitted that the defendant was the person described in the California court papers, and after reviewing the plea minutes, conceded that the defendant received all his rights under Boykin v Alabama (395 US 238).
The defendant, however, challenged the 1980 California burglary conviction contending: (1) the California crime, although a felony in California, did not constitute a felony under New *789 York law, (2) the allocution at the time of defendant’s plea was inadequate, and (3) no probation report was prepared or provided.
Defendant’s arguments are without merit.
Counsel argued that unlike the New York burglary statute that requires a trespass, the California burglary provision requires only a simple intent to enter a building or an enclosure. Defense counsel thus argued: “For that reason, it is incongruent with a New York Burglary conviction or any other New York felony and consequently cannot serve as a basis for a sentence enhancement in New York.” (Sentence transcript, at 19-20.)
There is no need to engage in an examination or comparison of the constituent elements of the two burglary statutes because Penal Law § 70.10 does not require that a crime in another jurisdiction be a felony under New York law. The statute requires only that it be a “crime in any other jurisdiction” for which “a sentence to a term of imprisonment in excess of one year * * * was imposed” (Penal Law § 70.10 [1] [b] [i]).
The defense further bases its challenge to the California conviction upon People v Gill (109 AD2d 419 [3d Dept 1985]).
In Gill (supra), following defendant’s felony conviction, the Court scheduled a persistent felony hearing, where defendant’s two prior California judgments of conviction were received in evidence. Defendant’s first California conviction was for burglary, for which he was sentenced to a prison term of 1 to 15 years. The Second California conviction was for burglary and grand theft, for which he was sentenced to 32/3 years in prison. After the persistent felony hearing, and based principally on these two prior California convictions, the New York sentencing Judge adjudged defendant a persistent felony offender and imposed a term of 15 years to life. (Supra, at 420.)
Defendant in Gill (supra) argued that his prior California convictions may not be considered in forming the predicate for his persistent felony offender status within the meaning of Penal Law § 70.10 (1). (109 AD2d, at 420.) The Court in Gill stated that if the statute is read on its face, requiring only that each of the prior convictions be such that a sentence of over one year be imposed, then defendant’s arguments would be without merit. (Supra, at 420-421.) However, the Gill Court said that the statute should not be read on its face, and that it suffers from the same constitutional infirmity as that contained *790 in Penal Law former § 70.06 dealing with second felony offenders. The Gill Court stated that in People v Morton (48 AD2d 58 [3d Dept 1975]) it had previously ruled that former section 70.06, with similar wording to Penal Law § 70.10, was unconstitutional, and the Gill Court noted that former section 70.06 was legislatively amended. (109 AD2d, at 420-421.)
The Court in Gill (supra) stated that, in its view, Penal Law § 70.10 suffers from the same problem as that found by the Court in Morton (supra) in former section 70.06. The Court observed that the only way to avoid the problem was for a defendant to knowingly waive the problems by acknowledging that his California crimes were equivalent to felonies in New York, which the defendant in Gill refused to do. (109 AD2d, at 421.)
The Court in Gill thus held that, to avoid the consequence of unconstitutionality, all of the statutory elements of the out-of-State convictions must constitute a felony in New York. (Supra.) The Court in Gill stated: “In order to determine whether a foreign crime is equivalent to a New York felony, the court must examine the elements of the foreign statute and compare them to an analogous New York Penal Law felony (People v Augle, 87 AD2d 348). The foreign crime cannot be extended or enlarged by allegations in the indictment or by referring to evidence at trial (People v Gonzalez, 61 NY2d 586, 589) * * * The allegations of the accusatory instrument may be referred to when necessary to clarify the statutory charge or to either limit or narrow the basis for the conviction, but they may not be used to enlarge or expand the crime charged (supra, at p 591).” (People v Gill, 109 AD2d, at 421.) It is this holding in Gill that is relied upon by defendant Ortiz in arguing that he should not be treated as a persistent felony offender.
As stated, the Third Department in Gill (109 AD2d, supra, at 421) cited its prior holding in Morton (48 AD2d 58, supra). In Morton, defendant was convicted upon his plea of guilty to a felonious possession of a controlled substance. Prior to sentencing, the court learned that defendant had been convicted of marihuana possession in Texas and had been sentenced to five years in prison, with the jail term suspended and a probationary term imposed for five years. As a result of the Texas felony conviction for marihuana possession, the Court in Morton sentenced defendant as a second felony offender, imposing a prison term of three to six years. (People v Morton, 48 AD2d, at 59.) The Morton Court agreed with defendant’s two arguments that Penal Law former § 70.06 was unconstitutional. First, the *791 Court said that to treat a statute that would allow imprisoning someone as a second felony offender (under Penal Law former § 70.06, identical to our statute here of Penal Law § 70.10) simply based on the length of the term of imprisonment imposed for the prior convictions, without regard to whether those felonies, if committed in New York, would be felonies here as well, deprives a defendant of equal protection of the laws. (48 AD2d, at 59-60.)
The Court in Morton (supra) also adopted defendant’s second argument that Penal Law former § 70.06 violated the constitutional provisions vesting the legislative power of the State of New York in the Senate and the Assembly. This power includes the responsibility for prescribing proper punishment for the various crimes, and such power cannot be delegated to the legislative body of another State. Accordingly, the Third Department in Morton held that former section 70.06 was unconstitutional and thus null and void “insofar as it provides that the extent of punishment for a convicted New York felon is dependent upon the authorized sentence for an offense of which he has previously been convicted in another jurisdiction.” (48 AD2d, at 60.)
Curiously, counsel for defendant Ortiz in the case at bar, while discussing Gill (supra), does not discuss People v Parker (49 AD2d 657 [3d Dept 1975], revd 41 NY2d 21 [1976]). In Parker, defendant pleaded guilty to the crime of manslaughter in the first degree. On the date set for séntencing, the prosecutor filed a prior felony offender statement charging the defendant with having been convicted of the crime of larceny by breaking and entering in North Carolina during 1971. In North Carolina, defendant was given a sentence of three to five years, execution of which was suspended. Upon the manslaughter conviction in New York, defendant was sentenced as a second felony offender, pursuant to Penal Law former § 70.06, to a term of 6 to 12 years. Defendant, on appeal, contended that the use of the North Carolina conviction as a predicate for multiple felony offender punishment was unconstitutional. (41 NY2d, at 23.)
The Appellate Division in Parker agreed with the defendant. (49 AD2d, supra, at 657.) The Appellate Division, Third Department, relied on its prior opinion in People v Morton (supra), stating: “[S]ection 70.06 of the Penal Law [is] unconstitutional insofar as it makes the extent of punishment for a convicted New York felon ‘dependent upon the authorized sentence for an offense of which he has previously been convicted in an *792 other jurisdiction’ ” (49 AD2d, at 657, quoting People v Morton, 48 AD2d, at 60).
Parker (supra), unlike Morton (supra), was appealed to the Court of Appeals. The Third Department was overruled. (People v Parker, 41 NY2d 21 [1976], supra.) The Court of Appeals, in Parker, noted the conflict in the lower courts regarding the constitutionality of the statute, Penal Law former § 70.06, regarding whether an individual may be sentenced to a term of imprisonment in excess of one year in a foreign jurisdiction for a crime which might not constitute a felony in New York. (People v Parker, 41 NY2d, at 23.)
The Court of Appeals in Parker (supra) cited cases like Morton (supra), sustaining a constitutional challenge, and took note of contrary decisions, such as People v Wright (50 AD2d 729 [1st Dept 1975]), upholding the statute’s constitutionality. (41 NY2d, at 24.) The Court of Appeals, in Parker, came down on the side of the First Department’s holding in Wright and rejected the Third Department’s holding in Morton (48 AD2d, at 58.) The Court of Appeals in Parker held:
“We hold that the imposition of second felony offender status upon individuals convicted in other jurisdictions of crimes which in such other jurisdictions warrant sentence of imprisonment in excess of one year is rationally related to the valid governmental aim of treating habitual offenders more severely than first time offenders. The equal protection clause does not mandate absolute equality of treatment but merely prescribes that, absent a fundamental interest or suspect classification, a legislative classification be rationally related to a legitimate State purpose * * *
“The Legislature, in enacting the challenged provision, exercised its considered judgment to provide that the seriousness of a crime should be determined by the severity of the sentence and the norms prevailing in the jurisdiction in which a crime was committed. There is no warrant for any alarm in what may be termed as exaggerated fears of frivolous or perverse sister-State punishment. The possible disparity of treatment between prior New York offenders vis-a-vis prior out-of-State offenders does not vitiate the legislative decision that an individual who has previously elected to violate the criminal standards of the society in which he was found should be treated as an habitual offender.” (41 NY2d, at 25-26.)
Subsequent to the Court of Appeals decision in Parker (supra), the Third Department recognized that Morton (supra) was overruled in Parker. Specifically, in People v Shangraw (55 *793 AD2d 796 [3d Dept 1976]), the Court held that the defendant was properly sentenced as a second felony offender based on a prior conviction for burglary in Pennsylvania: “The defendant was sentenced as a second felony offender based upon a prior conviction for burglary in the State of Pennsylvania. In the case of People v Morton (48 AD2d 58) this court held that section 70.06 of the Penal Law as it related to out of State convictions was unconstitutional. (See, also, People v Parker, 49 AD2d 657.) The Court of Appeals, however, has recently reversed the People v Parker case (41 NY2d 21) and declared that section 70.06 of the Penal Law is constitutional. The defendant had pleaded guilty to the second felony charge and, accordingly, he was properly convicted thereof.” (55 AD2d, at 796-797.)
The continued reliance on Morton (supra), in cases such as Gill (109 AD2d 419, supra) and People v Sasso (176 AD2d 410 [3d Dept 1991]), is puzzling, to say the least. But those cases are clearly errant missteps in light of Parker (41 NY2d 21, supra), and cannot be followed. (See, People v Griffin, 168 AD2d 972 [4th Dept 1990] [rejecting a challenge to the constitutionality of Penal Law § 70.10, and citing Parker as authority], lv denied 77 NY2d 906 [1991].) In Griffin, the Fourth Department, citing the holding of the Court of Appeals in Parker, affirmed the denial of defendant’s motion to vacate his sentence as a persistent felony offender. In his two prior convictions, the defendant in Griffin was sentenced to prison terms in excess of one year. (168 AD2d, at 972.) The Appellate Division stated: “Since defendant received a sentence in excess of one year on each of those convictions they were properly considered for persistent felony offender adjudication (see, Penal Law § 70.10 [1] [b] [i]).” (Supra, at 972.)
In a memorandum of law, defendant Ortiz tries to minimize the effect of the Court of Appeals decision in Parker (41 NY2d 21, supra), and the First Department’s opinion in Wright (50 AD2d 729, supra), by citing a statement of the United States Court of Appeals in Sailor v Scully (836 F2d 118, 120, n 1 [2d Cir 1987]). Sailor involved a challenge to a second felony offender status. (Supra, at 119.) Yet, in Sailor, the Second Circuit — citing only to Gill (109 AD2d 419, supra) — stated in a footnote that “a felony committed outside New York must be equivalent to a New York felony to qualify as a predicate conviction for enhanced sentencing * * * and has been construed to be a requirement of the persistent felony offender provision”. (836 F2d, at 120, n 1.) This conclusion by the Second Circuit construing New York law is incorrect because it failed *794 to recognize that Gill’s holding had been rejected by the Court of Appeals in Parker.
Indeed, a recent opinion of the United States Court of Appeals in Griffin v Mann (156 F3d 288 [2d Cir 1998]) upheld the constitutionality of the persistent felony offender statute in Penal Law § 70.10 from the same attack as that made by defendant Ortiz here and implicitly corrected its own misstatement in Sailor.[3] In Griffin, the District Court held that Penal Law § 70.10 was unconstitutional because of a perceived anomaly with section 70.06. The Second Circuit in Griffin reversed the District Court and elaborated:
“The issue in the instant matter arises out of the district court’s concern that some prior crimes are deemed more serious for persistent offender status than they are for second offender status. For example, a defendant with two prior out-of-state felony convictions for crimes without a New York counterpart would quality as a persistent offender under Section 70.10 but not as a second offender under Section 70.06. In its most egregious, if hypothetical, manifestation, this apparent anomaly could leave such a defendant exposed to sentencing as a persistent offender for acts that New York lawmakers had consciously determined to be unworthy of felony status. However, in our view, this seeming anomaly does not amount to a distinction of constitutional significance.
“Section 70.10 was enacted to prescribe a ‘special sentence for only those who persist in committing serious crimes after repeated exposure to penal sanctions. . . .’ Commission Staff Notes on the Proposed New York Penal Law, § 30.10, at 285 (1964). Three main features furthered that objective. First, actual imprisonment under the prior sentence was required. See id. at 284-85. Second, felony convictions were eligible to be counted whether or not they constituted a felony under New York law. See id. at 285. The alternative — a predicate felony for persistent offender purposes must be a crime that constitutes a felony under New York law — was explicitly considered and rejected at the time of enactment * * * Third, imposition of these sentence enhancements was to be at the sentencing court’s discretion. ‘The discretionary feature allows the court to weigh the substance of foreign convictions and consider all of the circumstances. This will provide fairness to the offender and protection for the public.’ Id. * * *
*795 “In brief, we believe that the repeat offender scheme is entirely rational. First, persistent offender sentencing is discretionary, while second offender sentencing is mandatory. New York might reasonably have concluded that it was necessary to circumscribe narrowly what constitutes a qualifying crime for purposes of the mandatory sentencing enhancements for second offenders while providing a looser definition of predicate crimes for purposes of the discretionary sentencing enhancements for persistent offenders. Second, predicate felonies for persistent offender status must have resulted in a sentence of imprisonment of more than one year, while predicate crimes for second offender status need not have resulted in imprisonment. This ensures that those deemed persistent offenders based on federal or out-of-state crimes without a New York counterpart have in fact committed serious crimes.” (156 F3d, at 291-292.)
In light of Parker (supra), Wright (supra), and the recent opinion in Griffin (supra), defendant Ortiz’s challenge to Penal Law § 70.10 is rejected.
The law is also well established regarding what constitutes an “imposed” sentence “in excess of one year”. (Penal Law § 170.10 [1] [b] [i].)
In People v Vincent (105 AD2d 468, 469 [3d Dept 1984]), the defendant had three separate felony convictions for which he received sentences of 9 to 23 months; 7 to 23 months, 29 days; and 1 to 6 years. Defendant in Vincent argued that he should not have been sentenced as a discretionary persistent felony offender under Penal Law § 70.10, since the above-cited three sentences he received did not meet the standard of “in excess of one year”. The Court in Vincent held, however, that defendant is properly sentenced as a persistent felony offender if the uppermost term of the indeterminate sentence imposed is over a year. The Vincent Court further held that defendant did not have to serve in excess of one year. The Court added: “The language of this section is so clear that this court is not at liberty to interpret it further or ‘to engraft exceptions where none exist’ ”. (105 AD2d, at 469, citing McKinney’s Cons Laws of NY, Book 1, Statutes § 76.)
The defense conceded that the California burglary conviction constituted a crime for which a sentence in excess of one year was imposed.
In defendant’s second enumerated challenge to the California conviction, he argued that there had been no actual allocution when he entered his guilty plea. This argument is *796 without merit. The California court conducted an ample allocution, as revealed by the transcript of defendant’s guilty plea, wherein defendant’s lawyer informed the court: “[We] [c]oncur in the plea, join in the waivers, and believe there is a factual basis for the plea” (transcript, Mar. 6, 1980).
The allocution by the California court was far more than is constitutionally required under New York law. Even a one-question allocution was upheld by the Court of Appeals in People v Fooks (21 NY2d 338, 346-347, 350 [1967]), decided as one of several companion cases under the lead title case of People v Nixon (21 NY2d 338 [1967], cert denied sub nom. Robinson v New York, 393 US 1067 [1969]). In Fooks, “[a] 11 that was elicited by the court from counsel and defendant was that no prior promises had been made. Nothing was asked as to the factual basis for the plea.” (Supra, at 350.) The only argument made by the defendant in the Fooks appeal is “that the court was obliged to catechize the defendant about the underlying facts of the alleged crime.” (Supra, at 347.) In affirming Fooks’ conviction, the Court of Appeals rejected the notion “that a uniform mandatory catechism of pleading defendants should be required.” (Supra, at 353.)
Defendant’s final argument is that no probation report was presented. Defendant is incorrect. The plea minutes reveal that the California court had received and reviewed the probation report. Thus, all of defendant’s arguments addressed to his 1980 California conviction are rejected.
(c) Defendant’s April 9, 1976 New York Robbery Conviction
After reviewing the transcript of the defendant’s 1976 Bronx County plea and sentence to robbery, third degree, the defense conceded that no constitutional infirmity to said conviction existed.
Other Felonies
Although the court’s Notice and Statement identified only three felonies as required by the statute, supra, a number of his other California convictions, where a sentence in excess of one year was imposed, would also constitute felonies under section 70.10. This is discussed more fully infra.
Phase II: The Defendant’s History and Character
In contending that the defendant’s “history and character” warranted “extended incarceration and life-time supervision” (Penal Law § 70.10 [2]; CPL 400.20 [1]), at the next phase of the hearing, the People placed into evidence defendant’s rap sheet and criminal history, which identified his convictions in New York and California.
*797 (a) New York Convictions
1. An April 1, 1965 arrest in Bronx County for burglary, resulting in a commitment on July 2, 1965 to a term of three years. Ortiz was released on March 14, 1968. In light of the length of the jail term imposed, Ortiz was obviously convicted of a felony. Although this conviction was not identified as a felony in the court’s Notice, it was contained in his “rap” sheet which was included in the court’s Notice.
2. Defendant’s January 6, 1970 conviction in Bronx County of assault in the third degree, a class A misdemeanor. A sentence of time served was imposed.
3. Defendant’s August 27, 1970 conviction in Bronx County of drug possession, a class A misdemeanor, and a conditional discharge.
4. An August 24, 1970 arrest in Bronx County for possession of a dangerous drug in the sixth degree, a class A misdemeanor, resulting in a plea of guilty to a class A misdemeanor escape and a narcotic certification of one year.
5. An April 21, 1971 conviction in Bronx County of assault in the third degree, a class A misdemeanor, and a sentence of three months.
6. Defendant was arrested in Bronx County on June 4, 1971 for grand larceny auto, and on June 17 for robbery in the second degree. He pleaded guilty on or about June 23, 1971 to a class A misdemeanor of unauthorized use of a vehicle for both arrests and was committed to a one-year jail term.
7. A September 30, 1973 conviction in Bronx County for criminal mischief in the third degree, class E felony. He was sentenced to six months.
8. On October 27, 1973, the defendant was arrested in Bronx County for criminal possession of a controlled substance in the sixth degree, resisting arrest, and other charges. His rap sheet reflects a commitment on some charge of 15 days on November 13, 1973.
9. An April 8, 1974 conviction in Bronx County for petit larceny, a class A misdemeanor. He was sentenced to six months.
10. On January 20, 1974, defendant was convicted in Queens County of the misdemeanor of attempted resisting arrest, and was sentenced on May 3, 1974 to 30 days. On the same day, he was convicted in Queens County of petit larceny, a class B misdemeanor, and also received a 30-day term.
11. On January 21, 1975, defendant was arrested in Bronx County for robbery in the first degree. He pleaded guilty to *798 robbery in the third degree and was sentenced to a four-year prison term. This was one of the felonies enumerated in the court’s Notice. In this case, defendant took jewelry from two complaining witnesses by displaying what appeared to be a pistol.
12. On October 4, 1983, defendant was arrested in Bronx County for robbery in the first degree and other charges. A bench warrant was issued on October 7, 1983. He pleaded guilty on November 9, 1994 to disorderly conduct, a violation, and was sentenced to time served.
13. On October 31, 1994, defendant was convicted in Bronx County of petit larceny and sentenced on May 9, 1995 to time served.
14. On May 5, 1995, defendant pleaded guilty to petit larceny in New York County and was sentenced to 15 days’ incarceration.
15. On May 15, 1995, defendant was arrested in Bronx County on charges of petit larceny and criminal possession of stolen property in the fifth degree. He was sentenced to a conditional discharge.
16. A June 22, 1995 guilty plea in New York County to petit larceny and a jail term of 10 days.
17. On January 5, 1996, defendant was convicted in New York County of petit larceny and sentenced to 90 days.
18. On August 11, 1995, defendant was arrested in New York County for attempted robbery in the third degree. He pleaded guilty to petit larceny and was sentenced on August 17, 1995 to 30 days.
19. A January 5, 1996 guilty plea in New York County to petit larceny and a sentence of 90 days. (See, item No. 17, supra.)
20. On January 19, 1996, defendant was convicted in Kings County of attempted criminal contempt in the second degree, a misdemeanor, and sentenced to 60 days.
21. On January 4, 1996, defendant was convicted in Queens County of petit larceny and sentenced to 30 days.
22. Defendant was arrested in Bronx County on May 2, 1996 for robbery in the first degree. A worker at a store observed defendant leave with unpaid sheets. When the security guard approached the defendant, he pulled out a pair of scissors and pointed them at the guard. Although such facts appear to constitute the felony of robbery, on September 4, 1997, defendant was permitted to plead guilty to menacing or disorderly *799 conduct, for which he received a conditional discharge. (Cf., Probation report, dated Sept. 4, 1997.)[4]
23. On June 28, 1996, defendant was arrested in Bronx County for manslaughter, a class B felony. The defendant struck another man, who fell into a coma and thereafter died. Upon his plea of guilty to assault in the third degree, he was sentenced on September 4, 1997 to 60 days in jail and a term of probation of three years. He also pleaded guilty to petit larceny and received a conditional discharge.
(b) California Convictions
1. On April 9, 1979, defendant was charged with suspicion of burglary. He was sentenced to two years’ confinement. This conviction would have qualified as a felony under section 70.10.
2. On March 2, 1980, defendant was charged with burglary (two counts), and subsequently convicted of burglary in the second degree for which he received a sentence of two years’ confinement.
3. On November 27, 1983, defendant was charged with burglary and received a sentence of five days’ confinement.
4. On November 23, 1988, defendant pleaded guilty to being under the influence of a controlled substance and was sentenced to six days in jail and 36 months of probation.
5. On March 20, 1990, defendant was charged with possession of narcotics. He received one year and four months’ incarceration. Under applicable New York law, this California sentence would have qualified as yet another felony. (See, Penal Law § 70.10; People v Vincent, 105 AD2d 468, supra).
6. In April 1991, defendant was charged with possession of drug paraphernalia. He pleaded guilty and was sentenced to 60 days.
7. On March 7, 1993, defendant was charged with spouse beating. He received a jail term of 60 days and 24 months’ probation. He thereafter violated his probation by failing to return to court and a bench warrant was issued on March 3, 1994.
8. Defendant was arrested on another charge of spousal beating on May 20, 1993. Defendant pleaded nolo contendere, and *800 was sentenced to a jail term of 30 days and 24 months’ probation. Defendant violated the probation, and was then committed to a jail sentence of 90 days.
9. On November 20, 1993, defendant was convicted of petit larceny and sentenced to 180 days in jail.
10. In addition to the 1980 California burglary conviction (committed in November 1979, and included as one of the three felonies enumerated in this court’s Notice of May 12, 1998), the defendant was convicted of another burglary in California for which he received a jail sentence of two years (committed in June 1979).[5]
Although the Notice and Statement served by this court on May 12, 1998 included only his 1980 California felony conviction of burglary, for which defendant was given a prison term in excess of one year, as listed supra, a number of his other California convictions would also qualify as felonies under section 70.10.
Defendant’s Employment of Aliases and Other False Pedigree Information
The record established that the defendant utilized at least six different aliases in New York, two different Social Security numbers, and 11 dates of birth. His New York arrests were originally reported under four different NYSID numbers, which were ultimately consolidated under one.
Defendant employed seven known aliases in California.
THE DEFENSE CASE
The defense called two witnesses, the defendant and his “common-law” wife of two years, Ms. Annasie Ernestine. The defendant also addressed the court before sentencing. He described his growing up in a home with an alcoholic and physically abusive father who gave him alcohol to drink when he was a “little boy” (sentence transcript, at 247). Ms. Ernestine characterized the defendant as “very humble”, “very cooperative”, “very respectful”, always helping her with domestic chores, “very kind” and “loving”, and one who “gets along very well with everybody” (sentence transcript, at 60-61, 65).
*801 CONCLUSION
Defense counsel conceded that the rap sheet is a substantially accurate reflection of Ortiz’s “actual criminal history” (see, sentence transcript, at 47-48). The evidence at the hearing before me reveals that this “actual criminal history” constitutes a thesaurus of criminal behavior spanning over three decades. It covers a wide gamut of criminality involving crimes against property, crimes against individuals, crimes against public order and authority, crimes for economic gain, crimes of violence, and the use and threatened use of weapons. The defendant’s crimes have been directed at strangers and even against his own spouse.
Commencing in 1964, defendant has terrorized and victimized individuals in New York and California. He has compiled a total of 34 arrests in New York, resulting in at least 23 convictions, and 20 arrests in California, resulting in at least 10 convictions.
There are only 5 years within this 34-year period of virtually uninterrupted criminal activity during which the defendant has not been incarcerated. In some years, defendant had multiple convictions within the same year. Defendant’s rap sheet, unfurled, extends to over 18 feet.
His crimes of violence have resulted in one death and, but for a near miracle, almost caused a second.
On April 22, 1996, the defendant punched one Raul Rodriguez in the face with his closed fist, causing the victim to fall backward and strike his head on the sidewalk. The victim lapsed into a coma and died a few days later.[6]
In the trial before me, Ortiz’s appearance on the stand revealed him a bundle of rage and fury, a time bomb waiting to explode. He admitted he “gets agitated real easily” and once agitated “nothing stops [him] from doing what [he] wants to do.”
Defendant’s total disregard for, and abuse of authority, are evidenced by his escape from a New York State narcotics facility in 1970; a history of bench warrants in Manhattan, Brooklyn, and the Bronx; his outstanding violation of probation in California; his parole violation conviction in California; and his vicious armed attack upon emergency medical service technician Kelleher on October 3, 1997, within weeks after be *802 ing placed on probation after his plea of guilty to assault, third degree.
Defendant’s use of a knife in his assault upon Kelleher was not his first experience with knives or weapons. In May 1996, defendant threatened a store security guard with a pair of scissors. Twenty years earlier, in 1975, he displayed what appeared to be a pistol in the commission of a robbery. His propensity for violence is evidenced by his convictions for attempted resisting arrest, robbery, assault, burglary, and two convictions of spouse beating.
At the hearing before me, the defendant was given the opportunity to present evidence in his behalf. He admitted that the criminal record herein described is, in fact, his and that he is responsible for all of the crimes listed. However, he and his attorney urged this court not to sentence the defendant as a persistent felony offender but rather to impose a minimum sentence, specifically, that authorized upon conviction of attempted assault, second degree. This view overlooks entirely the purpose behind the persistent felony statute, which authorizes the sentencing court to treat defendants more severely if “by repeated criminal acts [they] have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.” (Rummel v Estelle, 445 US 263, 276 [1980].)
The defense also argued that because a number of Ortiz’s convictions were misdemeanors, they were somehow “trivial”. Included among these so-called “trivial” crimes are two convictions for spouse beating, an assault which resulted in the death of the victim, threatening a security guard with a pair of scissors, and other similar “trivial” criminal acts.
The only witness to testify in behalf of the defendant, besides the defendant himself, was his common-law wife. Although she described the defendant’s relationship with his and her family as “beautiful” and “loving” and testified that he “gets along very well with everybody”, not a single relative, neighbor or friend appeared as a character witness or to offer any kind words about the defendant.
Defendant’s conviction by a jury on April 8, 1998 of attempted assault upon Mr. Kelleher represented what appeared to be his fourth felony conviction in New York alone.[7] He was thereafter convicted by me of violation of the terms of proba *803 tion imposed upon him a few weeks prior to his assault upon Kelleher. He has been convicted 31 additional times in two States for a multitude of felonies, misdemeanors, and offenses. His voluminous criminal record includes eight felonies.[8]
Based upon the evidence presented at the hearing, I find that Juan Ortiz’s history of violence, of disdain for lawful authority and of uninterrupted criminal behavior, evinces an individual who poses a real and imminent danger and threat to the lives, safety, and security of residents of every community in which he chooses to circulate. He is an evil, vicious, and violent predator and totally incorrigible. He was a menace to society on October 3, 1997, when he left his home armed with an 18-inch knife, seeking someone to stab. His criminal history demonstrates that he has been a menace to society for many years, and that he remains so. “[B]y [his] repeated criminal acts” he has overwhelmingly demonstrated that he is “simply incapable of conforming to the norms of society as established by its criminal law.” (Rummel v Estelle, 445 US, supra, at 276.) If he is not stopped, and stopped now, he will take another human life.
I therefore conclude that the history and character of the defendant and the nature and circumstances of his criminal conduct are such that extended incarceration and lifetime supervision is necessary to best serve and protect the public interest.
Accordingly, it is my sentence that the defendant be incarcerated for a period of 15 years to life. I also impose a concurrent sentence of one year, upon defendant’s conviction of violation of probation.

. A concurrent one-year term for violation of his earlier probation, following a separate hearing, was also imposed.

. Jurisdictions that mandate life imprisonment upon a third conviction include: 18 USC § 3559 (c); Ala Code § 13A-5-9; Ark Code Annot § 5-4-501 (d) (1); Cal Penal Code § 1170.12; Colo Rev Stat § 16-13-101; Conn Gen Stat § 53a-40 (f); Del Code Annot, tit 11, § 4214; DC Code Annot § 22-104a; Fla Stat Annot § 775.084 (4) (a); Ill Comp Stat Annot, ch 730, ¶ 5/5-5-3 (c) (7); Ind Code Annot § 35-50-2-8.5; La Rev Stat Annot § 15:529.1 (A); NJ Stat Annot § 2C:43-7.1 (a); NM Stat Annot § 31-18-23; NC Gen Stat § 14-7.12; ND Cent Code § 12.1-32-09 (1) (a); 42 Pa Cons Stat Annot § 9714 (a) (2); SC Code Annot § 17-25-45 (A); Tenn Code Annot § 40-35-120; Va Code Annot § 19.2-297.1 (A); Wash Rev Code Annot § 9.92.090; Wis Stat Annot § 939.62; W Va Code § 61-11-18 (b).
Some States are even stricter, having enacted “two strikes” statutes, mandating life imprisonment upon a second felony conviction. (Ga Code Annot § 17-10-7 [b] [2]; SC Code Annot § 17-25-45 [A].) Other States have enacted similar statutes calling for life imprisonment upon a fourth felony conviction. (Md Code Annot, art 27, § 643B; Nev Rev Stat Annot § 207.010 [b]; Vt Stat Annot, tit 13, § 11; Wyo Stat Annot § 6-10-201 [b].)
On the subject of repeat offender laws, see generally Clark, Austin and Henry, Three Strikes and You’re Out, 81 Judicature 144 (Jan.-Feb. 1998).

. Interestingly, the Second Circuit in Griffin (supra) made no mention or citation of its prior decision in Sailor v Scully (supra), which relied exclusively on People v Gill (109 AD2d 419, supra).

. A report of the New York City Department of Probation, and the computers of the court indicate that the defendant pleaded guilty to disorderly conduct, a violation, in connection with his removal of property and wielding of scissors at the security guard. The rap sheet in evidence, cited by the prosecutor at the hearing, indicates a conviction for menacing in the second degree, a misdemeanor.

. The three California burglary convictions cited as items 1, 2 and 10 are not duplicative. The evidence at the sentencing hearing established that they represent three separate and distinct convictions, before three different sentencing Judges, on different dates and bearing separate case numbers.

. See minutes of August 5, 1997 in People v Ortiz (Crim Ct, Bronx County, slip opn, at 6). The defendant pleaded guilty on such date to a misdemeanor, assault in the third degree. (Supra, slip opn, at 4-5.)

. In addition to the 1976 robbery, third degree, and 1998 attempted assault, second degree, which constituted two of the three felonies listed in the *803 court’s May 12, 1998 Notice and Statement, the other two are: his 1965 burglary arrest in Bronx County which resulted in his commitment on July 2, 1965 to a term of imprisonment of three years, and his 1973 Bronx County conviction of criminal mischief in the third degree, an E felony.

. In addition to the four New York convictions cited in footnote 7, his four California convictions are for: burglary (2 counts; Feb. 4, 1980), burglary (Feb. 5, 1980), burglary (Mar. 1980), and narcotics possession (1990). (See also, n 5, supra.)