OPINION OF THE COURT
Thomas F. Lioto, J.
On February 26, 2001, this Court was presented with an or *8 der to show cause, requesting that the Village of Westbury, by its prosecutor, show cause why a plea of guilty for the defendant, George G. Woodard, should not be vacated and also enjoining the New York State Department of Motor Vehicles from enforcing a license revocation rendered on January 13, 2001 against the defendant. This Court signed the order to show cause and directed that the defendant, through his counsel, obtain copies of the plea and sentencing minutes for this proceeding. The Court also signed a temporary restraining order, nunc pro tunc, to January 13, 2001, enjoining the Department of Motor Vehicles and restraining it from revoking the defendant’s license or taking any other action in connection with same during the pendency of these proceedings. The order to show cause originally had a return date of February 22, 2001 and that was adjourned to March 7, 2001, at which time it was submitted without legal argument.
The defendant has alleged that he received a simplified traffic information in the Incorporated Village of Westbury for disobeying a steady red signal, a violation of Vehicle and Traffic Law § 1111 (d) (1), on March 13, 2000 at approximately 8:30 p.m. This particular offense is a moving violation arid carries three points on a license, if convicted, which are theri imposed administratively by the Department of Motor Vehicles. The defendant pleaded to a reduced and amended charge on October 24, 2000, to a violation of Vehicle and Traffic Law § 1110 (a), failure to obey a traffic control device, which carried with it two points rather than three. Fines of $100 and a surcharge of $30 were imposed. The reduced plea was the product of plea negotiations between the defendant’s counsel, Lee Albin, Esq., of Albin & Richman, and the Village Attorney, Dwight Kraemer. In an affidavit filed with the Court and signed by Mr. Woodard, the defendant indicated:
“During the course of negotiations I neglected to advise my attorneys that at the time of the issuance of the summons I was driving with a restricted license which was issued on February 15, 2000, for a period of six months. This [sic] facts was [sic] not related to counsel for the Village, so that both counsel for the Village and my attorney were primarily focusing upon the amount of points that I would have since the prime object of negotiating was for me to be assured that my license would remain intact if I pleaded guilty to the summons.
“I pleaded guilty with the understanding that my *9 license would not be suspended or revoked. It was a mistake in failing to convey this information to my attorney or to the Village Attorney for had they known, they would not have advised to enter a plea of guilty to the summonses.”
The defendant then indicated in his affidavit that he had received an order of revocation from the Department of Motor Vehicles on January 13, 2001.
The plea allocution and sentence for the defendant were as follows:
“the court: George Woodard? Counsel, notice of appearance. Mr. Albín, right?
“me. albín: Yes. How are you?
“the court: How are you? I haven’t seen you for a while. How are you doing? Everything is okay?
“me. albín: Trying to stay young, not easy.
“the court: You have always been young. I know you for a long time.
“Mr. Kraemer tells me, Mr. Albin, you have had an opportunity to conference the case with him this morning and as a result of those discussions, Mr. Kraemer indicates his offer to let your client plead guilty to a reduced and amended charge.
“He was originally charged with disobeying a red steady signal light, a violation of Vehicle and Traffic Law Section 1111(d)(1), which if convicted or, if he plead guilty to that, he would have received three points on his license for the first offense, the fine would be a maximum of $100, there is no minimum on that. Second offense, $200, no minimum. Third offense, $300, and no minimum. All of those would have to have occurred within 18 months of each other. There is a mandatory surcharge on that particular offense of $30, together with possible jail sentences of 15 days on the first offense, 45 on the second offense, and 60 days on the third.
“I mention that, Counsel, not to terrorize you, but merely to let your client know what a terrific job you have done for him this morning.
“Mr. Woodard, do you understand everything I said?
“the defendant: Yes.
“the court: Your lawyer tells me you would like to plead guilty to a reduced and amended charge *10 which will upon conviction, carry two points on your license.
“Is that what you wish to do?
“the defendant: Yes, sir.
“me. albín: That’s the understanding I had with Counsel.
“the court: Yes, sir.
“Okay. Then your guilty plea is accepted to a violation of Vehicle and Traffic Law Section 1110(a).
“Now Counsel, is there anything you would like to say on your client’s behalf before I impose a fine and surcharge in connection with this matter?
“mk. albín: No, your Honor. I think I explained everything to Mr. Kraemer, and it’s not necessary to repeat it. Thank you, sir.
“the court: All right. And nothing that your client would like to say, I take it?
“the defendant: No, sir.
“mr. albín: He is a Village resident here and very active in the benefit of many of the residents here. He is the superintendent of the Phipps Estate, and he has had a lot of stress recently.
“the court: Such as?
“mr. albín: His matrimonial affairs and doing a hell of a job for Mr. Phipps.
“the court: I see that there was a revocation of his license because he had three speeds within 18 months, and a revocation on March 5, 2000.
“mr. albín: He is driving with a restricted license, your Honor.
“the court: Okay.
“mr. albín: He has been attending school at night, three nights a week.
“the court: Did he have a license restriction or otherwise on March 13?
“mr. albín: I don’t believe so.
“the court: When this ticket was given to him?
“the defendant: No, it was restricted. I had a restricted license.
“the court: All right. Well, unfortunately, Counsel, and you have done a terrific job with this reduced and amended plea — One second.
*11 “I don’t see any prior offenses for disobeying a traffic control device, so all of his priors are for speeding.
“mr. albín: That’s correct.
“the coubt: And one outside the 18 month period for not wearing a seat belt, so I will not consider that.
“But because there are these speeds and because of the revocation which occurred on March 5, I will impose a maximum fine of $100 together with a surcharge of $30.
“mb. albín: Thank you, your Honor. We appreciate that. Stay well.
“the coubt: Take care.”
It is the defendant’s position that he is entitled to take his plea back under Boykin v Alabama (395 US 238 [1969]) and People v Harris (61 NY2d 9 [1983]). The People oppose the vacatur of the plea under People v Harris (61 NY2d 9 [1983]), People v Nixon (21 NY2d 338, 353), People v Austin (117 AD2d 835 [3d Dept 1986]), People v Chapple (269 AD2d 621 [3d Dept 2000]) and People v Francis (38 NY2d 150, 154).
A plea, when it is properly executed, is the fuel by which the inferno of the criminal justice system sustains itself. Without pleas, the system would stop and the turnstile of justice would be brought to a halt. The system’s insatiable appetite for pleas must be balanced against the need to preserve the adversarial system, advocacy and the defendant’s undeniable right to a fair trial. Judgments and pleas are entitled to finality. They cannot be revisited due to hypertechnical error or belated “Monday morning quarterbacking” simply because a defendant or his counsel may believe that, in retrospect, they might have secured a better bargain or that the sentence itself is unfair. If that were the case, then every plea and sentence would be subject to becoming undone.
The taking of a plea is not the equivalent of a poker game where everyone, including the court, is playing with their cards close to the vest. Rather, the court has an affirmative duty to facilitate justice by insuring that pleas are taken knowingly, voluntarily and intelligently. It is never the goal of this Court to “hoodwink” justice. One plea here or there means little to the overall functioning of the system. But it may mean everything to a defendant. If a defendant takes a plea without knowing that he will be securing points on his license by doing so, or that his license may be subject to suspension or revoca *12 tion, then he may have been overreached by the clamor for efficiency in our courts, or his own ignorance of the law, or in still other cases, his attorney’s failure to explain the implications of his plea.
The court is not a rubber stamp as defendants come off of an assembly line. No case is boilerplate and all defendants have individual rights. A defendant’s claim that he was not afforded his rights when he entered his plea suggests that the plea bargain was unfair, that an adhesion contract within the criminal justice system may have occurred. But, if adhesion contracts are barred in the commercial market place, so they must be prohibited in the halls of justice where the consideration is not money, but liberty, freedom and due process of law. (See Henningsen v Bloomfield Motors, 32 NJ 358, 161 A2d 69 [1960]; Annotation, Privity of Contract As Essential to Recovery in Action Based on Theory Other than Negligence, Against Manufacturer or Seller of Product Alleged to Have Caused Injury, 75 ALR2d 39 [1961]; see also, Uniform Commercial Code § 2-302; Murphy, Lawyers For The Poor View The Uniform Consumer Credit Code, 44 NYU L Rev 298 [1969]; Note, The Uniform Commercial Code as a Premise For Judicial Reasoning, Unconscionable Contracts, 65 Colum L Rev 880, 891 [1965]; Note, Commercial Law: Uniform Commercial Code: Unconscionable Contracts, 51 Cornell L Q 768 [1968].) These fundamental rights must be inherent in every criminal case and in every bargain that is ever struck therein. The criminal justice system, more so than in any other aspect or field of law, must retain its vibrancy for social change, progress, equality and, above all else, preserve and protect individual rights and liberties. All other fields of endeavor will look to us with envy as long as we jealously guard these cherished principles of jurisprudence. So it is today that this lowly Court spends its time, as all others must, in insuring the public that while “these truths are self-evident,”[1] we must be reminded of them in every case.
Efficiency, whatever the term may mean, can be the enemy of due process. Plea bargains, with the prospect of otherwise more severe sentences, chip away at the underpinnings of democracy, namely, trials and advocacy. All courts must insure that under the guise of efficiency or “standards and goals” or whatever other nomenclature is contemporaneously used to describe speed within the system, that we always proceed with *13 the care and caution that attention to individual rights deserves. Lest these words be hollow, we should pause here and now to consider the merits of this argument to vacate a plea.
Today this Court vacates the plea of the defendant finding that it was involuntarily entered. The defendant was unaware of civil penalties that were ultimately imposed against him by the Department of Motor Vehicles. This Court finds that the license to drive is a privilege and an important property interest where the consequences of suspension or revocation may create inconvenience and serious financial hardship. Since the accumulation of 11 points within an 18-month period or three or more speeding convictions within that period will cause a revocation of a defendant’s license to drive, it is incumbent upon the Court to review the defendant’s driving record and to advise the defendant as to the possible or even certain consequences of taking a plea. (See Vehicle and Traffic Law § 510 [2] [a] [iv].) While this particular defendant has the advice of counsel, it is even more important for courts to advise pro se defendants in this regard.
If, as Emerson once said: “a foolish consistency is the hobgoblin of little minds,” then stare decisis, while not foolish, may needlessly slow the growth of the law, if Judges are not prepared to have a tug of war with that legal doctrine and all others, until a new equilibrium of jurisprudence is achieved. The sine qua non of judging is that it is a life force urgency that compels us to rail against injustice in search of due process and fundamental fairness. Each human being must have one mission and it is not to aimlessly or blindly follow precedent solely because it is there. It is also not to devolve into existential dilemmas at every turn. It is to challenge ideas and old notions, discovering their utility or obsolescence in modem life. Few Judges are prepared to reverse themselves, or to admit their own error.[2] This Court will. It is not for this Court to blame others. Instead, it must assume responsibility and bite the judicial bullet.
*14 In Boykin v Alabama (395 US 238 [1969]), it was determined that there are certain fundamental rights that every person accused of a crime has and which may only be waived knowingly, voluntarily and intelligently. So it is that the right to a jury trial, to testify in your own behalf, to cross-examine witnesses called to testify against you, to call your own witnesses, and to be prosecuted by Grand Jury indictment are fundamental rights subject to a knowing, voluntary and intelligent waiver.
In People v Harris (61 NY2d 9 [1983]), New York retreated from that holding somewhat by saying that there is no “catechism of rights” of which a defendant must be apprised when he enters a guilty plea. But the Harris decision is essentially one that allows for considerable latitude in upholding guilty pleas as constitutionally acceptable. It is a decision that supports the status quo and institutional bureaucracy. It holds that all judgments and pleas should come to a final resting place and that there is a minimal standard of constitutionality to be applied in gauging whether a plea satisfies New York’s requirements.[3]
This Judge believes that in an application for the withdrawal or vacatur of a plea, individual rights must be balanced against institutional convenience. In such an analysis the scales of justice easily tip in favor of individuals since governmental institutions have no rights per se.[4] They are meant to serve the will of the people, including individual defendants who ask to take back their pleas because they contend that they were not fully apprised of their rights or because the bargain into which *15 they entered was unfair to them. If there were victims in this case aside from society as a whole, then this Court would have to give due consideration to them, but still the scales of justice would have to easily tip in favor of individual rights to be protected by the Bill of Rights, those to be afforded all defendants.
The question by this motion and many others of a similar genre is whether a defendant should be permitted to withdraw his plea because, in retrospect, he now believes that he did not knowingly, voluntarily and intelligently enter into it and, accordingly, the bargain was unfair and should be vacated. The defendant now says that he was not aware at the time that his restricted license would be revoked by the entry of this guilty plea. Of course he is right, but why? A defendant who needs his license to get to and from school, work or for medical reasons may have a hardship that cannot be solved by the use of public transportation. Why would a defendant knowingly, voluntarily and intelligently enter a plea if he is aware that, as a result, his license would be suspended or revoked? He may as well continue to try to negotiate a better plea bargain or take his chances at trial. For a contract or plea bargain to be valid, it must be at arm’s length and fair. It cannot be the product of overreaching or a contract of adhesion where one side overpowers another. Similarly, it should not be the product of boilerplate, take it or leave it language and fine print where rights are masked, confused, camouflaged or unknowingly waived. In some respects defendants are consumers. They are entitled to fair warning of the ftdl consequences, both civil and criminal, of their plea. They are entitled to no less merely because they are defendants and stand accused or even convicted. It is the responsibility of this Court and all others to police the bargain to determine its fairness.
Courts are reluctant to vacate pleas because they are bargained-for exchanges. A court may go through excruciating detail in securing a plea. When a defendant moves to vacate it, the court may feel that its time has been wasted, that the turnstile of justice has been stalled. The bureaucracy stops and has to go in reverse, undoing what it has done or already placed in motion. In a sense, too, the system has relied upon the representations made to it by the defendant and his or her counsel, if there is one, that the plea is being made knowingly, voluntarily and intelligently. While motions to vacate pleas are rare, understandably courts have a fear that by granting a motion to vacate a plea, they will be precipitating an avalanche of *16 similar requests. This Court does not see that, particularly where the plea bargain is a fair one. In 10 years of being a Village Justice, this is the first application that I have had to vacate a plea. If the plea is fair, rarely will a defendant move to set it aside.
There are many reasons why pleas are taken, including expediency and a defendant not being able to afford the time and expense of a trial. In every case, the sine qua non of a fair plea bargain is how it compares with a sentence likely to be imposed following an unfavorable verdict at trial. The risks of the trial then must be weighed against the benefits and disadvantages of a plea. In this case there were few benefits to be gained by the entry of a plea and at least one very important disadvantage, the revocation of a license. In such a scenario, the risks of going to trial are de minimis and if a defendant cannot avoid a revocation by his plea, then he may as well go to trial. If the defendant is going to lose his license anyway, the disadvantages of a plea clearly outweigh their advantages. In “policing the bargain,” as is the court’s responsibility, I find that the plea entered in this case is inherently unfair and must be vacated. Aside from being unfair on its face, the Court finds that it must set aside the plea, nunc pro tunc, to October 24, 2000, the date upon which it was entered.
This Court also finds that it erred with respect to not informing the defendant and his counsel of the consequences of the defendant’s plea, namely, the revocation of his license. While the Court itself does not impose points on a license or revoke a license, they are a part of the penalties imposed, albeit so-called civil penalties meted out administratively by the Department of Motor Vehicles. There is no hearing, but rather, by operation of the Vehicle and Traffic Law of the State of New York, a defendant’s license is revoked if he incurs 11 or more points within 18 months or three speeding violations within that same period of time or sustains still more points while driving with a restricted license. This Court has access to the Department of Motor Vehicles data base which informs us of prior vehicle and traffic convictions; outstanding warrants; auto insurance, if any, in effect; fines paid or not; and other pedigree information. This Court makes it a practice to obtain this information for every defendant in this Court charged with a moving violation. This information is then considered at the time of sentencing, but never before then.
Courts and prosecutors must never deal from the bottom of the deck or create the appearance that they are withholding *17 vital information about penalties in order to secure a plea. While the Court is very confident that that did not happen here, this decision may also serve as an example for others to follow.
The administrative laxative of “standards and goals,” which requires a timetable for the disposition of all cases in the system, must give way to due process. “Standards and goals” do not appear in the Constitution, due process does. This Court finds that the prosecutor and the Court have a responsibility to disclose, before the entry of a plea, the civil penalties that will be imposed by the Department of Motor Vehicles as a consequence of the plea. These penalties include, but are not limited to, points, revocations and civil fines. At the time of the entry of the plea and allocution, the Court should voir dire the defendant as to these penalties before it can find that a plea has been knowingly, voluntarily and intelligently entered. If the Court does not take these precautions, then the plea may later be subject to attack as not being knowingly, voluntarily and intelligently made.
The Cotut hereby vacates the plea and restores the defendant, ab initio, status quo ante, in all respects to his position, prior to the entry of his plea including any driving privileges that he may have had at that time.

. The actual quote is: “We hold these truths to be self-evident” (Declaration of Independence).

. Esteemable exceptions are Honorable Jack B. Weinstein, a giant in the law whose greatness may be measured by his humility in recognizing his own fallibility and yet never relenting from the creative solution to legal problems. In United States v Udeagu (110 FRD 172 [ED NY 1986]), the icon of jurisprudence, on a defense motion, vacated a plea of guilty in a drug case because he had inadvertently not advised the defendant of the parole release guidelines at the time of the entry of his guilty plea. That leadership by Judge Weinstein is a model of judicial temperament for this Court and all others to follow. Similarly, Honorable Joanna Seybert, showed great courage in setting aside a conviction based upon an error, which she conceded, in not *14 giving jurors an intoxication charge requested by the defense. (See United States v Crowley, 79 F Supp 2d 138 [ED NY 1999], affd in part, revd in part 236 F3d 104 [2d Cir 2000].) Her decision was affirmed on appeal.

. The New York Legislature has sanctioned a review of the constitutionality of predicate felony convictions. (See CPL 400.21 [7]; see Thomas F. Liotti and Peter B. Skelos, A Valid Strategy In Felony Cases Is To Challenge Prior Convictions, The Nassau Lawyer, Mar. 1988 at 1, 12.) The Supreme Court of the United States has also informed us of the fairness that must apply in the plea bargaining process. (See Santobello v New York, 404 US 257 [1971]; see Thomas F. Liotti, Twelve Rules For Negotiating The Plea, The Attorney of Nassau County, Oct. 1994 at 8; Thomas F. Liotti and H. Raymond Fasano, Federal Plea Agreements: A Contract Is A Contract, The Attorney of Nassau County, Oct. 1995 at 17, 20, 21, 22; Thomas F. Liotti and H. Raymond Fasano, The Nolo Contendere Plea: Pleading To The Charge While Saving Face, The Attorney of Nassau County, Dec. 1996 at 14; see also, Lawrence N. Gray, New York Criminal Practice, ch 10, Plea Negotiations [2d ed 1998]; see also, CPL 440.10 [which allows for the vacating of a conviction based upon certain enumerated factors].)

. See generally, Raoul Berger, Government By Judiciary: The Transformation of the Fourteenth Amendment (Liberty Fund, Inc. 1997).